No. 88-390

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

JON CONTWAY,

Plaintiff and Appellant,

-vs-

SHERIFF MIKE CAMP, Sheriff of Phillips
County; DEPUTY SHERIFF JIM MAXI, a Deputy
Sheriff of Phillips County; SHERIFF BARRY
MICHELOTTI, Sheriff of Cascade County;
ANTONIA MARRA, a former Deputy County
Attorney of Cascade County; CASCADE COUNTY;
and PHILLIPS COUNTY,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas P. Meissner, Lewistown, Montana

For Respondent:

John C. McKeon, County Attorney, Malta, Montana
Patrick L. Paul, County Attorney; Steven M. Hudspeth,
Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: Dec. 16, 1988

Decided: February 16, 1989

Filed:

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


Appellant, Jon Contway, appeals from an order of dismissal under Rule 12(b)(6), M.R.Civ.P., of the District Court of the Eighth Judicial District, County of Cascade, dismissing, with prejudice, his amended complaint against all respondents.

Jon Contway was married to Patricia Contway on January 6, 1978. On August 8, 1986, while going through dissolution proceedings, Contway signed a separation agreement with Patricia awarding her custody of their three minor children, subject to plaintiff's right of visitation. The separation agreement was integrated into the final divorce decree of October 14, 1986.

On August 27, 1986, appellant took the children from the State of Montana, in violation of their separation agreement. On September 10, 1986, the State filed a criminal information against appellant on the ground of custodial interference, a felony. A warrant for his arrest was issued by the district judge and bail on the warrant was set at $10,000.

Approximately five months later, on January 15, 1987, appellant returned to Malta, Montana, and left the children at the local office of Family Services there. On that same day, defendant Sheriff Jim Maxie of Phillips County arrested the appellant pursuant to the outstanding warrant. Prior to and subsequent to arresting appellant, Sheriff Maxie consulted with Cascade County Sheriff's Department to verify that a valid warrant was still in existence there. Sheriff Maxie made these inquiries to insure that his arrest of Contway was lawful. Contway had informed the sheriff that

the arrest would be improper because he had transferred custody of his children to the Montana Department of Family Services. Cascade County refused to cancel the valid arrest warrant and appellant was arrested by Phillips County officials and placed in custody on January 15, 1987. On January 16, 1987, Cascade County officials went to Malta, picked up the appellant, and brought him into custody in Cascade County. The appellant remained in custody there until January 22, 1987, when the criminal information against Contway was dismissed after the children had been returned to the lawful custody of their mother and appellant had written and signed a stipulation stating that the children had been "returned to the custody of Patricia Contway in accordance with 45-5-304 (1985)." Based on that stipulation and appellant's motion to dismiss dated January 21, 1987, the felony charge was dismissed on January 22, 1987, and Contway was released from custody.

Contway then brought an action against the respondents alleging that his "arrest and false imprisonment were contrary to law." In his amended complaint, appellant alleged that at the time of arrest and imprisonment, he was a candidate for legislative office for the State of Montana; and appellant alleged in his original complaint that such wrongful arrest and false imprisonment damaged his reputation and, as a consequence, damaged his political race. In addition, at the time of his arrest and imprisonment, appellant was starting a consulting business in Great Falls, Montana, and he alleged that due to the wrongful arrest and imprisonment his business opportunities were curtailed and the business never got started.

That action was dismissed at the District Court level on a Rule 12(b)(6), M.R.Civ.P. motion and he now appeals to this Court.

3

The issue on appeal is whether the District Court properly dismissed the plaintiff's amended complaint.

Section 45-5-304, MCA, states:

> Custodial Interference. (1) A person commits the offense of custodial interference if, knowing that he has no legal right to do so:
>
> (a) he takes, entices, or withholds from lawful custody any child, incompetent person, or other person entrusted by authority of law to the custody of another person or institution;
>
> (b) prior to the entry of a court order determining custodial rights, he takes, entices or withholds any child from the other parent where the action manifests a purpose to substantially deprive that parent of parental rights; or
>
> (c) he is one of two persons who has joint custody of a child under a court order and he takes, entices, or withholds the child from the other where the action manifests a purpose to substantially deprive the other parent of parental rights.
>
> (2) A person convicted of the offense of custodial interference shall be imprisoned in the state prison for any term not to exceed 10 years or be fined an amount not to exceed $50,000, or both.
>
> (3) A person who has not left the state does not commit an offense under this section if he voluntarily returns such person to lawful custody prior to arraignment. A person who has left the state does not commit an offense under this section if he voluntarily returns such person to lawful custody prior to the arrest. [Emphasis added.]

4

Appellant asserts that as a consequence of the language of § 45-5-304(3), MCA, he should not have been arrested after he returned the children to "lawful custody" of Family Services. Respondents insist that his arrest was valid under the statute because returning the children to the local office of Family Services (then SRS) was not a return to "lawful custody" as called for by the statute. They assert that "lawful custody" is custody awarded by the decree and Contway could only have avoided arrest by returning the children to the custody of their mother, to whom custody was awarded by the court.

Appellant argues that whether or not the warrant was legally and validly issued is irrelevant and that the validity of the warrant "makes no difference" because of the language found in § 45-5-304, MCA: "[a] person who has left the state does not commit an offense under this section [custodial interference] if he voluntarily returns such person to lawful custody prior to arrest." Appellant argues that even if it is presumed that the warrant was validly issued, the respondents' action in serving the warrant and arresting him constituted a basis for an action against the respondents because Contway had obeyed the statute by returning the children to the custody of Family Services. Contway argues that returning the children to Family Services is returning them to "lawful custody" before arrest as required by the statute.

The respondents argue that § 45-5-304(3), MCA, is a defense to a conviction for custodial interference if a criminal defendant raises and proves the defense as in any other affirmative defense. Respondents recognize that the statute does not state that subsection (3) is a defense to an arrest, as opposed to a conviction, but posit that "the Legislature could have stated as such," and that the more

reasonable construction of subsection (3) is that it is like any other affirmative defense which imposes a burden of proof upon the defendant and not upon the state.

The words of this statute prohibit the taking of a child from "lawful custody" and permit a noncustodial parent who has left the state to be free of committing custodial interference if he voluntarily returns the child to "lawful custody" prior to arrest. The words "lawful custody" are of common usage and are sufficiently plain and precise to put any reasonable person on notice concerning what conduct is prohibited. Appellant attempted to thwart the court decree by turning the children over to Family Services which was not the lawful custodian named in the decree.

We hold that lawful custody in marital dissolution proceedings is that custody awarded by the court. A district court in the circumstances of this case has jurisdiction to make a child custody determination. Section 40-4-211, MCA; Wilson v. Wilson (1980), 186 Mont. 290, 607 P.2d 539. An individual cannot return children to the custody of a legal entity of his choice. He must return them to the entity granted lawful custody by the court in dissolution proceedings.

The legislature was cautious in providing a means by which a noncustodial parent may return children to the custodial parent and avoid penal sanctions. This statute was enacted to maintain parental custody against all unlawful interruption, even if a child is a willing, undeceived participant in the attack on the parental interest. Section 45-5-304, MCA, Criminal Law Commission Comments.

As to the state's argument that section (3) is a defense to a <u>conviction</u> rather than an arrest, we note that the statute formerly allowed the conduct to be excused if the person taken was returned before trial for the offense

commenced. In 1979 the legislature amended the statute and added subsection (3) which provides that a person does not commit the offense of custodial interference if he returns the individual taken to lawful custody prior to arraignment or, in the case of a person who has left the state, prior to arrest.

The district court judge properly applied the law in response to the respondents' motion to dismiss under Rule 12(b)(6), M.R.Civ.P. On a motion to dismiss the court takes the allegations of the plaintiff to be true and construes the allegation in a light most favorable to the plaintiff. Mogan v. City of Harlem (Mont. 1987), 739 P.2d 491, 44 St.Rep. 1212; Willson v. Taylor (Mont. 1981), 634 P.2d 1180, 38 St.Rep. 1040. The court will then grant the motion only if it appears beyond any doubt that the plaintiff can prove no set of facts which would entitle him to relief. Fraunhofer v. Price (1979), 182 Mont. 7, 594 P.2d 324; Kinion v. Design Systems, Inc. (1982), 197 Mont. 177, 641 P.2d 472.

The respondents' arrest of Contway was a valid arrest under a valid warrant as a result of Contway's attempt to frustrate the directive of the divorce decree by releasing the children to custody of a state agency rather than to the custody decreed by the court.

For the foregoing reasons, the District Court's decision is affirmed as to all respondents.

_____
Justice

We Concur;

_____
Chief Justice

_____

_____

_____
R. C. Gulbrandson
/Justices