No. 89-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

IRVIN ELLIS LARSON, WILLIAM LARSON,
WYLEY GOOD, THOMAS KEELEY, MELVIN KING,
PAUL LEHMAN, RONALD PAIGE, ROBIN W. SPARKS,
AND THOMAS L. TOPE,

        Plaintiffs and Appellants,

  -vs-

FIRST INTERSTATE BANK OF KALISPELL, and FIRST
INTERSTATE BANCORP, INC.,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif Erickson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sidney R. Thomas; Martha Sheehy; Moulton, Bellingham,
        Longo & Mather, Billings, Montana
        William A. Rossbach; Rossbach & Whiston, Missoula,
        Montana

    For Respondent:

        Dana L. Christensen and Debra D. Parker; Murphy,
        Robinson, Heckathorn & Phillips, Kalispell, Montana

---

Submitted on Briefs: Dec. 21, 1989

Decided: February 14, 1990

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs, limited partners in Crystal Lakes Limited Partnership ("Crystal Lakes"), brought this action to recover damages as a result of defendants' alleged tortious acts against Crystal Lakes, including forcing the general partner to breach his fiduciary duties. The defendants moved to dismiss for failure to state a claim upon which relief can be granted. The District Court for the Eleventh Judicial District, Flathead County, granted the motion and dismissed the Complaint. Plaintiffs appeal. We reverse.

The sole issue for our consideration is whether the District Court properly dismissed the plaintiffs' Complaint for failure to state a claim for which relief could be granted?

It is a well established rule in Montana that a Complaint should not be dismissed for failure to state a claim upon which relief may be granted unless it appears certain that the plaintiff is entitled to no relief under any set of facts which could be proved in support of his claim. See Mogan v. City of Harlem (1987), 227 Mont. 435, 739 P.2d 491. On a motion to dismiss under M.R.Civ.P. 12(b)(6), the court takes the allegations of the plaintiff to be true and construes the allegations in a light most favorable to the plaintiff. Contway v. Camp (Mont. 1989), 768 P.2d 1377, 46 St.Rep. 270.

Following are the pertinent portions of the plaintiffs' Complaint:

¶I: Plaintiffs William E. Larson, Wyley Good, Thomas Tope, Melvin King, Irvin Larson and Paul Lehman entered into an agreement with Rolland Andrews to form a limited partnership known as Crystal Lakes Development Company, with plaintiff William E. Larson and Rolland Andrews as general partners and the other plaintiffs as limited partners. The purpose of Crystal Lakes was to acquire and develop certain real estate in the vicinity of Fortine, Montana as a golf course and related recreational and residential development.

¶II: In 1979 and 1980 three additional partners joined Crystal Lakes: plaintiffs Thomas Keeley, Robin Sparks and Ronald Paige. On April 9, 1981, William E. Larson resigned as a general partner and became a limited partner.

¶III and IV: In order to acquire property and develop Crystal Lakes Country Club and subdivision, Crystal Lakes entered certain financial arrangements with First Interstate Bank of Kalispell ("Bank"). Crystal Lakes depended on the Bank to provide it with loans and other financial assistance, and for information and advice in the management and development of the business. Over time Bank officials became more involved in directing Crystal Lakes on how it should operate and on what the Bank required it to do to keep obtaining financing.

¶V and VI: For the first few years Crystal Lakes made steady progress in developing the real estate and was able to keep current on its obligations. The Bank's involvement increased. Plaintiffs allege the Bank urged Crystal Lakes to acquire an additional 600 acres of land ("Vredenburg Land"), even though it would entail a

significant increase in the total debt.

¶VII and VIII: The Vredenburg Land was already encumbered by a large debt to the Bank and one of the other subsidiaries of Western Bancorp ("Bancorp"). In order to induce Crystal Lakes to purchase the Vredenburg land, Bank officials entered into an agreement whereby the Bank promised Crystal Lakes that if it purchased the acreage, the Bank would provide Crystal Lakes with a loan to purchase the land and an open credit line up to five million dollars to enable Crystal Lakes to have sufficient funds to fully develop the property. The Bank further agreed that once the property was fully developed, the five million dollar credit line would be converted to a long term real estate loan.

¶VIII through XI: In reliance upon these promises, Crystal Lakes entered into agreements to purchase the Vredenburg land for $1,500,000. At the time of the closing, Andrews was assured by the Bank that Crystal Lakes would have the time and credit it needed to make the project work. In reliance on this promise, general partner Andrews entered into the agreement on behalf of Crystal Lakes. Crystal Lakes then initiated major expansion efforts, borrowing additional funds and doing additional developments on the property. On August 5, 1982, the general partner executed a mortgage with the Bank which reflected the five million dollar credit line the partnership agreed to as part of the earlier agreement. During this period of time, the Bank came more directly under the control of Bancorp.

¶XII through XV: In approximately June of 1983, the Bank,

4

under the direction of Bancorp, gave the partnership notice that it no longer intended to perform as promised, breaching its agreement to provide credit and compelling all of the plaintiff limited partners individually to enter into a new "work out" agreement. Under the terms of this agreement, the Bank would provide limited additional short term funding, but would not give the partnership the financial assistance agreed to and would not permit Crystal Lakes to continue to develop the land completely. The general partner, Andrews, was compelled to pledge all his personal assets to the Bank. After the execution of the new work out agreement, the Bank stopped all further cooperation and assistance and made it impossible for the partnership to sell the property for its full value.

¶XVI: On May 15, 1985, the Bank forced the general partner to sign certain documents, including a deed in lieu of foreclosure, to deed over essentially all the real estate of the partnership to the Bank. These documents were coerced by financial pressure on the general partner who had pledged all of his personal assets to the Bank. The Bank, under the direction of Bancorp, knowingly forced the general partner to violate his duty of trust and good faith to the limited partners. This resulted in severe financial detriment to the limited partners, causing them to lose their investment and all prospects of profit from that investment.

¶XVII: General partner Andrews' actions under duress caused substantial detriment to the limited partners and Andrews breached his duties of trust and good faith to the limited partners. He did

not advise the limited partners of his actions or in any way give them notice of the foreclosure documents until approximately one month later.

Plaintiffs sued to recover damages claimed by defendants' alleged tortious acts toward Crystal Lakes. Defendants moved to dismiss for failure to state a claim upon which relief may be granted. The District Court granted the motion and dismissed the Complaint. Plaintiffs appeal.

I

Did the District Court properly dismiss the plaintiffs' Complaint for failure to state a claim for which relief may be granted?

In granting the Motion to Dismiss, the District Court concluded that the Complaint failed to state a claim for which relief may be granted and more specifically, because the named plaintiffs were not the real parties in interest. The memorandum of the District Court pointed out that the plaintiffs argued that their losses were individual losses rather than losses to the partnership so that the individual partners could successfully maintain the present action. The District Court concluded that the Montana derivative action statutes, §§ 35-12-1401 through 1404, MCA, granted a limited partner the right to bring only a derivative action in the right of the limited partnership. The court based its decision on the case of Phillips v. Kula 200 II (Haw. Ct. App. 1983), 667 P.2d 261, 262, which held:

> Limited partners may not maintain individual actions for damages allegedly caused by a breach of the fiduciary

duty owed by the general partners to the limited partnership. The only way they may pursue that claim is derivatively.

The District Court concluded that the Complaint demonstrated that any profits which the plaintiffs alleged they were entitled to recover were based on their expectations from the limited partnership and that any damage had accrued as a result of the Bank's interactions with the general partner. The District Court concluded that the relief sought by the plaintiffs was available to them only by derivative action and that they were bound to follow that course.

In the appeal, the plaintiffs concede that Counts II, III and IV are properly to be brought as derivative actions or claims. Plaintiffs argue that Count I, which alleges that the defendants assisted and compelled the general partner to breach his duty of trust and good faith to the limited partners, allows the partners to bring individual actions as distinguished from the derivative action as limited partners.

Defendants maintain that the plaintiffs' claim failed to state a claim upon which relief could be granted because the action must be brought as a derivative action and the Complaint failed to set forth with particularity the effort of the plaintiffs to secure initiation of the action by the general partner, as required by §35-12-1403, MCA.

The controlling statutes for derivative actions in partnerships are §§35-12-1401 through 1404.

Section 35-12-1401, MCA, states:

A limited partner may bring a derivative action in the right of a limited partnership to recover a judgment in its favor _if the general partners having authority to do so have refused to bring the action or an effort to claim those general partners to bring the action is not likely to succeed_ (emphasis added).

Section 35-12-1403, MCA, states:

In any derivative action, the Complaint _shall set forth with particularity the effort of the plaintiff to secure initiation of the action by a general partner having authority to do so or the reasons for not making the effort_ (emphasis added).

Plaintiffs contend that under M.R.Civ.P. 9(a) they do not have to aver the capacity as a derivative action. It states:

It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party.

M.R.Civ.P. 23.1 states (in part):

In a derivative action . . .the Complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

The more specific rule governs. In view of the wording of the foregoing code sections and Rule 23.1, it would have been better practice for the plaintiffs to have specifically pleaded the appropriate allegations to meet those provisions. They did not specifically do so. However, Paragraph XVI of the Complaint did state in pertinent part as follows:

On May 25, 1986, the Bank . . . forced the general partner to sign certain documents . . . to deed over essentially all of the real estate of the partnership to

8

the Bank. These documents were coerced by financial pressure on the general partner who had pledged all of his personal assets to the Bank. The Bank . . . knowingly forced the general partner to violate his duty of trust and good faith to the limited partners. . . .

Rule 23.1 was considered in S-W Co. v. John Wight, Inc. (1978), 179 Mont. 392, 403, 587 P.2d 348, 354, as it applies to corporations. In that case, this Court made clear that as an alternative to making a demand upon the board of directors, the plaintiffs may show "such a state of facts as disclose that the demand, if made, would have been entirely unavailing." Plaintiffs argue that Paragraph XVI of the Complaint is sufficient to demonstrate that the demand would have been unavailing.

The key element of our analysis is to determine from the Complaint if it does appear beyond doubt that the plaintiffs cannot prove a set of facts which would entitle them to relief. From the Complaint we can determine the names and statuses of all the limited partners. While it would have been appropriate to state in the pleading that the limited partners were suing in a derivative action in the right of the limited partnership, the capacity of the limited partners to sue does appear from the Complaint. As a result, using the theory of Mont. R. Civ. P. 9(a), we conclude that under the record of this case it was not essential that the plaintiffs allege that they were suing in a derivative capacity in the right of Crystal Lakes.

Both §35-12-1403, MCA, and Mont. R. Civ. P. 23.1, require however, that the Complaint set forth with particularity the efforts on the part of these plaintiffs to obtain action by the

9

general partner, or the reasons for their failure to make that effort. Clearly it would have been proper for the plaintiffs to allege with particularity as so required. Had they done so, this extended controversy might have been eliminated.

Notwithstanding this failure, was it necessary that the District Court dismiss the Complaint? From the allegations of the Complaint, and in particular Paragraph XVI, the allegations demonstrate that the Bank forced the general partner to sign various documents and to deed over the real estate of the limited partnership and in so doing, knowingly forced the general partner to violate his duty of trust and good faith. While not clearly satisfactory, these allegations do demonstrate a reason for a failure on the part of the limited partners to request of the general partner that he commence the suit. A reasonable conclusion from the allegations is that a general partner who has knowingly executed legal instruments of conveyance to the Bank, will not commence an action in behalf of the limited partnership because of the violation of trust and good faith by the general partner. We therefore conclude that it does <u>not</u> appear beyond doubt that the plaintiffs cannot prove their effort to secure initiation of the action by the general partner or the reasons for not making the effort.

We further conclude that a reasonable alternative for the District Court was to allow the plaintiffs to remedy the defects of the Complaint through amendment. The Complaint is sufficient to establish that the plaintiffs have the statutory right and

10

standing to bring a derivative cause of action and that the plaintiffs are proper plaintiffs in such an action. We hold that the Complaint did not justify the entry of the dismissal for failure to state a claim upon which relief may be granted.

We reverse the order of the District Court, and remand with the direction that the plaintiffs shall be allowed to make appropriate amendments to the Complaint and for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice John C. Sheehy did not participate in this Opinion.

11