No. 01-810

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 229

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RYAN SCOTT JAMES PRICE,

Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Edward P. McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bruce Gobeo, Office of Public Defender, Missoula, Montana

For Respondent:

Mike McGrath, Montana Attorney General, Jim Wheelis, Assistant Montana
Attorney General, Helena, Montana; Fred Van Valkenburg, Missoula County
Attorney, Kirsten LaCroix, Deputy Missoula County Attorney, Missoula,
Montana

Submitted on Briefs: April 4, 2002

Decided:  October 10, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

**¶1      Ryan Price (Price) was charged in the Fourth Judicial District Court with the offense of custodial interference after failing to return his daughter, S.L.P., to the custody of her mother.  Price moved to dismiss the charge for improper venue, arguing that Lake County, where he had withheld S.L.P., and not Missoula County, where both parties resided and the dissolution proceedings were taking place, was the proper venue.  Price also moved to dismiss the charge on the grounds that § 45-5-304(3), MCA, was unconstitutional, arguing it violated equal protection and was void for vagueness. The District Court denied both motions, and Price subsequently entered into a plea agreement, reserving the right to appeal the court's rulings.  We affirm.**

¶2      The issues Price presents are:

1.  Whether the District Court erred in denying Price's motion to dismiss for improper venue; and

2.  Whether § 45-5-304(3), MCA, is constitutionally invalid because it violates equal protection or is void for vagueness.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶3      This case began in February 2000, when Price filed a petition for dissolution of marriage in the Fourth Judicial District Court, in Missoula County, Montana.  Price and his wife, Ling Ling Cheng (Cheng), had one child, S.L.P., who was four years old at the time.  The parties entered into an amended interim parenting plan on February 24, 2000, wherein the parties agreed that Monday through Friday, S.L.P. would reside with**

2

**Cheng, and from Friday at 3:00 p.m., until Monday at 8:30 a.m., she would stay with Price. The interim parenting plan also provided that Price and Cheng, who both lived in Missoula, Montana, would exchange S.L.P. at designated locations in Missoula. The parties could not agree on a final parenting plan, so a non-jury trial was set for Monday, October 23, 2000.**

¶4     As provided under the interim plan, Price had custody of S.L.P. the weekend prior to the October 23, 2000 trial.  However, Price did not appear at the trial.  According to Price's mother who was present in court, Price had left Missoula in the middle of the night, taking S.L.P. with him.  The bench trial proceeded and the court ultimately found the marriage to be irretrievably broken, and adopted Cheng's proposed parenting plan, giving Cheng custody of S.L.P.  **At the trial's conclusion, the District Court ordered that custody of S.L.P. be delivered to Cheng immediately, and that S.L.P.'s passport be returned to Cheng forthwith.  Later the same day, Cheng reported to the Missoula City Police that Price had failed to return S.L.P. as he was required to do earlier that day.**

¶5     Over the next two days, Missoula law enforcement learned Price had been staying in various locations, including Polson, in Lake County, and Columbia Falls, in Flathead County.  Price was ultimately discovered in Lake County at a bed and breakfast in St. Ignatius, Montana, where Lake County Sheriff Deputies arrested him on October 26, 2000.  Apparently, S.L.P. was with Price when he was arrested and she was later reunited with Cheng.

¶6      On November 21, 2000, Price was charged by Information in Missoula County with custodial interference, a felony, pursuant to § 45-5-304, MCA, to which he plead not guilty at his arraignment eight days later.  In the Information charging Price, the State asserted the following facts constituted the offense of custodial interference:

> On or about October 23 through October 26, 2000, the above-named defendant, knowing he had no legal right to do so, took, enticed, and/or withheld a child, SLP, who had been entrusted by authority of law to the custody of Ling Ling Cheng, by Order of the Honorable C.B. McNeil, issued on October 23, 2000.[1]

¶7      Price filed two separate motions to dismiss.  In his first motion, Price argued that Missoula County was not a proper venue, and in his second motion, Price alleged that Subsection (3) of the custodial interference statute, § 45-5-304, MCA, was constitutionally invalid.  Following separate hearings, the District Court denied both motions to dismiss.

¶8      Ultimately, the parties reached a plea agreement wherein Price agreed to plead guilty, and the State agreed to recommend a three-year deferred sentence.  In the agreement, Price reserved the right to appeal the court's rulings on his motions to dismiss.  The District Court accepted Price's guilty plea and entered its Judgment on August 8, 2001, in accordance with the plea agreement.  Price appeals the District Court's rulings denying his motion to dismiss for improper venue, and his motion to dismiss on the grounds that § 45-5-304(3), MCA, is unconstitutional.

---

[1]The Honorable C.B. McNeil was sitting in the Fourth Judicial District during the Final Parenting Plan bench trial.

## STANDARD OF REVIEW

**¶9     The grant or denial of a motion to dismiss in a criminal case is a question of law which is reviewed *de novo* on appeal.  *State v. Hardaway*, 2001 MT 252, ¶ 64, 307 Mont. 139, ¶ 64, 36 P.3d 900, ¶ 64 (citation omitted).  Our standard of review is plenary, and this Court determines whether a district court's conclusion is correct.  *Hardaway*, ¶ 64. When resolution of an issue on appeal involves a question of constitutional law, we review to determine whether the court's interpretation of the law is correct.  *Matter of S.L.M.* (1997), 287 Mont. 23, 32, 951 P.2d 1365, 1370 (citation omitted).**

## DISCUSSION

### Issue 1

**¶10     Did the District Court err in denying Price's motion to dismiss for improper venue?**

¶11     "Although venue is not an element of the crime, it is a jurisdictional fact that must be proven at trial as any other material element."  *State v. Diesen*, 2000 MT 1, ¶ 14, 297 Mont. 459, ¶ 14, 992 P.2d 1287, ¶ 14 (citations omitted).  In criminal trials, the State must therefore prove venue is proper beyond a reasonable doubt.  *Diesen*, ¶ 14 (citation omitted).

¶12     Montana's Constitution provides that a criminal defendant has a right to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, subject to the right of the state to have a change of venue for any of the causes for which the defendant may obtain the same."  Mont. Const. Art. II, Sec. 24.

5

Generally, "[i]n all criminal prosecutions, the charge must be filed in the county where the offense was committed unless otherwise provided by law." Section 46-3-110(1), MCA.

¶13 **Montana law also makes provision for those situations where the requisite acts of a criminal offense occur in multiple counties. Section 46-3-112, MCA, states:**

> **(1) Except as provided in 46-3-110(2), if two or more acts are requisite to the commission of an offense or if two or more acts are committed in furtherance of a common scheme, the charge may be filed in any county in which any of the acts or offenses occurred.**
> **(2) Except as provided in 46-3-110(2), if an act requisite to the commission of an offense occurs or continues in more than one county, the charge may be filed in any county in which the act occurred or continued.**

¶14 **Price was charged with violating Montana's custodial interference provision, § 45-5-304, MCA, which provides in relevant part:**

> **(1) A person commits the offense of custodial interference if, knowing that the person has no legal right to do so, the person takes, entices, or withholds from lawful custody any child, incompetent person, or other person entrusted by authority of law to the custody of another person or institution.**
> **. . .**
>
> **(3) With respect to the first alleged commission of the offense only, a person who has not left the state does not commit an offense under this section if the person voluntarily returns the child, incompetent person, or other person to lawful custody before arraignment. With respect to the first alleged commission of the offense only, a person who has left the state does not commit an offense under this section if the person voluntarily returns the child, incompetent person, or other person to lawful custody before arrest.**

¶15 **Price argues that the State failed to show beyond a reasonable doubt that he withheld S.L.P. while in Missoula County, since he had legal custodial rights until at**

6

**least 8:30 a.m. on October 23, 2000. Moreover, he asserts that the Information alleges his act of withholding S.L.P. occurred only in Lake County and not Missoula County. Price argues that according to the Information, the custodial interference did not occur until the District Court's order was entered on October 23, 2000, and contends the determinative inquiry as to venue rests with Price's whereabouts at the time the Final Parenting Plan was issued and Cheng was granted legal custody of S.L.P.**

¶16 While we agree that the Information alleges Price withheld his daughter in Lake County, thus making that county proper for the purposes of venue, this does not end our inquiry, since charges comprised of more than one requisite act may be brought in any county in which any of the acts occurred. *See* § 46-3-112(1), MCA. Therefore, we must first examine the requisite elements of § 45-5-304(1), MCA, and then determine if any of those elements occurred in Missoula County.

¶17 "A person commits the offense of custodial interference if, knowing that the person has no legal right to do so, the person takes, entices, or withholds *from lawful custody* any child, . . . entrusted by authority of law to the custody of another person . . . ." Section 45-5-304(1), MCA (emphasis added). Therefore, the components of the offense include the act of taking, enticing or withholding a child with the mental state of knowing he or she has no legal authority to do so, <u>and</u> the unlawful keeping of the child from the legal custodian.

¶**18** We find support in the Criminal Law Commission Comments on § 45-5-304, MCA, for the conclusion that keeping a child from her lawful custodian is a requisite element of custodial interference. The Commission stated that "[t]he interest protected [by § 45-5-304,

7

MCA] is not freedom from physical danger or terrorization by abduction, since that is adequately covered by [Montana's kidnaping provisions], but rather *the maintenance of parental custody against all unlawful interruption*, even when the child is a willing, undeceived participant in the attack on the parental interest." Thus, the focus of custodial interference is protection of the legal custodian's parental rights, and not the physical removal or sequestering of the child alone. We also note that other states have reached the same conclusion in interpreting similar custodial interference statutes as they relate to venue or jurisdiction. *See State v. Aussie* (Ariz. Ct. App. 1993), 854 P.2d 158 (county where the custodial parent resided at time of offense was proper venue for prosecution of custodial interference since prohibited result is deprivation of lawful custody); *State v. Doyle* (Idaho 1992), 828 P.2d 1316 (subject matter jurisdiction in custodial interference case rested in Idaho since withholding occurred where child was supposed to be returned**, noting that withholding of a child from a custodial parent is similar to withholding child support, and the result of unlawfully depriving custodian of custody also occurred in Idaho); and** *Wheat v. State* **(Alaska Ct. App. 1987), 734 P.2d 1007, 1010 ("[C]ommission of a crime is consummated in Alaska when the crime is defined to require a result as a necessary element and when that result occurs inside the state.").**

¶19    Accordingly, we conclude that deprivation of custodial rights is a requisite element of the offense of custodial interference. Therefore, to prove custodial interference under § 45-5-304, MCA, the State must establish the following requisite acts: (1) that the defendant,

8

knowing he had no legal right to do so, took, enticed, or withheld a child, (2) thus depriving the legal custodian of custody of the child.

¶20 When establishing the commission of an offense requires proving two or more acts, the charges may be filed in any county in which any of the acts occurred. *See* § 46-3-112(1), MCA. When an offense does not specifically define the place of commission, the site of the crime "must be determined from the nature of the crime and the location of the acts or omissions constituting the offense." *United States v. Clinton* (9th Cir. 1978), 574 F.2d 464, 465, *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978) (citing *United States v. Anderson* (1946), 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529, 1532) (held, failure to file tax return is an offense at the defendant's place of residence or at the collection point where the return should have been filed). *See also*, *United States v. Overaker* (9th Cir. 1985), 766 F.2d 1326, 1327 ("proper venue is based on the location of the offense, not the personal presence of the offender," and when "crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime") (citations omitted).

¶21 We have previously held that the county where tax returns are sent and collected is a proper venue for charges relating to failure to file a tax return. *Department of Revenue v. Lane* (1980), 187 Mont. 230, 233, 609 P.2d 300, 302. We have also concluded, under § 46-3-112(2), MCA, that the charge of stalking may be brought in the county where the defendant sent the victim letters and left offensive telephone messages. *State v. Cooney* (1995), 271 Mont. 42, 46, 894 P.2d 303, 306 ("the result of many acts which formed the bases of the

9

charge" occurred in the county where the defendant sent the letters and left telephone messages). Against this legal backdrop, we next consider where Price allegedly committed the requisite acts of custodial interference.

**¶22    According to Price's mother, Price left Missoula County with S.L.P. in the early hours of October 23, 2000. Under the interim parenting plan, Price retained legal custody of S.L.P. until 8:30 that morning. While the record does not establish where Price was at 8:30 a.m. on October 23, 2000, once he failed to return S.L.P. to Cheng, the lawful custodian under the interim parenting plan, Price had deprived Cheng of her right to lawful custody.[2]**

¶23    Cheng resided in Missoula County throughout these proceedings. Accordingly, the second element of custodial interference, deprivation of the legal custodian's lawful right to custody of a child, occurred in Missoula County where Cheng resided and where the court entered its order granting Cheng custody. Moreover, Cheng and Price agreed in the interim parenting plan to exchange custody of S.L.P. at one of two locations, both in Missoula.

---

[2]**While according to the Information, the State alleged Price committed the offense of custodial interference based on the District Court's October 23, 2000 order, we conclude that once the court entered its order, Price's action of withholding S.L.P., and his failure to return her to Missoula, continued to deprive Cheng of her legal right to custody of S.L.P. We note that at no time during these proceedings has Price asserted that he did not have notice of the court's October 23 order, granting Cheng legal custody of S.L.P.**

¶24 We conclude that at least one of the requisite elements of § 45-5-304(1), MCA, **depriving Cheng of lawful custody of S.L.P., occurred in Missoula, and therefore Missoula County constituted proper venue in Price's prosecution.** *See* § 46-3-112(1), **MCA. Moreover, the Commission Comments note that § 46-3-112, MCA, "allows the trial to take place in the most convenient county where an element of the offense occurred." Here, Cheng and S.L.P. resided in Missoula County, and the dissolution of marriage and custody proceedings were pending in the Fourth Judicial District Court's jurisdiction, in Missoula County.**

¶25 In denying Price's motion to dismiss for improper venue, the District Court concluded that part of the offense of custodial interference involved taking custody of S.L.P., and noted that Price committed further acts toward the commission of the offense when he kept S.L.P. Although the court characterized Price's act of taking S.L.P. from Missoula County as establishing venue, we will uphold a court ruling if it is correct, regardless of the reasons given below for the result. *See State v. Krause*, 2002 MT 63, ¶ 23, 309 Mont. 174, ¶ 23, 44 P.3d 493, ¶ 23 (citing *Hulse v. State, Dept. of Justice*, 1998 MT 108, ¶ 15, 289 Mont. 1, ¶ 15, 961 P.2d 75, ¶ 15). **Accordingly, we conclude the District Court did not err in dismissing Price's motion to dismiss on the basis of improper venue.**

## Issue 2

¶26 **Is § 45-5-304(3), MCA, constitutionally invalid because it violates equal protection or is void for vagueness?**

¶27 When resolution of an issue involves a question of constitutional law, our review is plenary. *State v. Koehn*, 1998 MT 234, ¶ 9, 291 Mont. 87, ¶ 9, 966 P.2d 143, ¶ 9 (citations omitted). In addition,

> [t]he constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt.

*Powell v. State Compensation Ins. Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, ¶ 13, 15 P.3d 877, ¶ 13 (quoting *Stratemeyer v. Lincoln County* (1993), 259 Mont. 147, 150, 855 P.2d 506, 508-09, *cert. denied,* 510 U.S. 1011, 114 S.Ct. 600, 126 L.Ed.2d 566 (1993). *See also, State v. Spina*, 1999 MT 113, ¶ 86, 294 Mont. 367, ¶ 86, 982 P.2d 421, ¶ 86.

¶28 Every possible presumption must be indulged in favor of the constitutionality of a legislative act. *Powell*, ¶ 13 (citing *Davis v. Union Pacific R. Co.* (1997), 282 Mont. 233, 240, 937 P.2d 27, 31). The party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute. *Powell*, ¶ 13 (citing *Grooms v. Ponderosa Inn* (1997), 283 Mont. 459, 467, 942 P.2d 699, 703). *See also, Spina*, ¶ 86 (party attacking the constitutionality of a statute bears a significant burden in establishing its invalidity).

¶29 Price asserts that Subsection (3) of § 45-5-304, MCA, is constitutionally invalid because it violates equal protection as applied to him and because it is void for vagueness. Section 45-5-304(3), MCA, provides:

12

**With respect to the first alleged commission of the offense only, a person who has not left the state does not commit an offense under this section if the person voluntarily returns the child, incompetent person, or other person to lawful custody before arraignment. With respect to the first alleged commission of the offense only, a person who has left the state does not commit an offense under this section if the person voluntarily returns the child, incompetent person, or other person to lawful custody before arrest.**

### *Equal Protection*

**¶30    Price argues that, of those defendants who do not leave the state, § 45-5-304(3), MCA, creates two classes of defendants depending on whether the child is with the defendant when arrested. According to Price, his equal protection rights were violated in this case because S.L.P. was with him when he was arrested, and thus he was unable to benefit from the defense allowed by the statute, since he was never given the opportunity to voluntarily return S.L.P. prior to arraignment.**

¶31    The Fourteenth Amendment of the United States Constitution and Article II, Section 4, of the Montana Constitution guarantee equal protection of the laws to all persons. *Spina*, ¶ 85 (citing *Matter of C.H.* (1984), 210 Mont. 184, 683 P.2d 931). To prevail on an equal protection claim, an injured party must first be able to demonstrate that the law or governmental action at issue discriminates by impermissibly classifying persons and treating them differently on the basis of that classification. *Spina*, ¶ 85 (citing *State v. Tadewaldt* (1996), 277 Mont. 261, 270, 922 P.2d 463, 468).

**¶32**    The State briefly argues that because the creation of these two classes depends on circumstances under which a defendant is arrested (timing, location, and defendant's choice

13

to have the child with him or her), the two groups may not be similarly situated. We disagree with this rationale. A defendant's ability to take advantage of any statutory defense is always influenced by his or her own volition and whether that person met or complied with the criteria of the defense. Rather, we conclude that those defendants who remain in-state and commit the same act (custodial interference), are **similarly situated for equal protection purposes even though one may have been arrested with the child and the other without. However, even having accepted Price's classifications, we conclude that Subsection (3) does not violate equal protection because it was not arbitrary in its application, and is rationally related to legitimate governmental interests.**

¶33 In reviewing an equal protection challenge, after the classes are identified and it is established they are similarly situated, we next must determine the level of scrutiny to apply. *See Matter of S.L.M.*, 287 Mont. 23, 951 P.2d 1365. **Equal protection challenges to legislation are reviewed under one of three recognized levels of scrutiny: strict, middle-tier, and rational basis test.** *See McDermott v. Montana Dept. of Corrections*, **2001 MT 134, ¶¶ 31-32, 305 Mont. 462, ¶¶ 31-32, 29 P.3d 992, ¶¶ 31-32; and** *Powell*, **¶¶ 17-19.**

¶34 Strict scrutiny applies when a classification affects a suspect class or threatens a fundamental right. Under this standard, the State has the burden of showing that the classification or State action is narrowly tailored to serve a compelling State interest. *McDermott,* ¶ 31 (citing *Armstrong v. State,* 1999 MT 261, ¶ 34, 296 Mont. 361, ¶ 34, 989 P.2d 364, ¶ 34). Intermediate or middle-tier scrutiny applies when the right in question has its origin in the Montana Constitution, but is not found in the Declaration of Rights. Middle-

14

tier scrutiny requires the State to demonstrate that its classification is reasonable and that its interest in the classification is greater than that of the individual's interest in the right infringed. *McDermott*, ¶ 32 (citing *Powell*, ¶ 18). Finally, when neither strict nor intermediate scrutiny applies, we review the equal protection claim **using the rational basis test. Under this standard, the classification must be rationally related to a legitimate government interest. *McDermott*, ¶ 32 (citing *Powell*, ¶ 19).**

¶35    On appeal, Price neither addresses, nor demonstrates, what level of scrutiny should apply to his claim that § 45-5-304(3), MCA, is unconstitutional. Significantly, Price does not assert that he is part of a suspect class, nor does he allege that any particular right, either fundamental or otherwise, is implicated in the application of § 45-5-304(3), MCA. **The State argues that even if Price demonstrated a fundamental right, the statute does not violate equal protection because the government can show a compelling interest for its action under the provision. While the State concedes that generally the State is better left out of civil parenting issues, it argues that "those who persist in hiding and who will not relinquish a child without the coercion of arrest cause the most damage to the child and the custodial parent." The State contends that § 45-5-304(3), MCA, promotes the safe and prompt return of children to their legal custodians, and also encourages compliance with court parenting determinations without further coercion from the State.**

15

**¶36** We have previously held that when an appellant has failed to show that any fundamental right was substantially abridged by the statute, it is unnecessary to apply strict scrutiny analysis to the challenged part of the statute. *Oberg v. City of Billings* (1983), 207 Mont. 277, 281, 674 P.2d 494, 496. *See also, State v. Luchau*, 1999 MT 336, ¶ 19, 297 Mont. 415, ¶ 19, 992 P.2d 840, ¶ 19 (in equal protection challenge to § 61-8-410, MCA, appellant failed to establish fundamental right to fair trial was violated and did not assert that he was part of a suspect class, therefore the Court reviewed his claim under the rational basis test). Moreover, this Court has "declined to address issues where the parties have failed to develop legal analysis to support their position." *Henry v. State Compensation Ins. Fund*, 1999 MT 126, ¶ 32, 294 Mont. 449, ¶ 32, 982 P.2d 456, ¶ 32 (citing *Johansen v. State, Dept. of Natural Resources,* 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24; and Rule 23, M.R.App.P.).

**¶37** Arguably, by failing to present any analysis regarding levels of scrutiny or potential governmental interests, Price has not met his burden of proof in demonstrating that § 45-5-304(3), MCA, is unconstitutional. *See Powell*, ¶ 13 (party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt)**; and *Spina*, ¶ 86 (party attacking the constitutionality of a statute bears a significant burden in establishing its invalidity). However, in line with our decisions in *Oberg* and *Luchau*, we will review Price's challenge of § 45-5-304(3), MCA, under the rational basis test.**

16

¶38 The rational basis test requires the statute to bear a rational relationship to a legitimate governmental interest by a showing that **(1) the statute's objective was legitimate, and (2) the statute's objective bears a rational relationship to the classification used by the legislature.** *Henry*, ¶ 33 (citing *Heisler v. Hines Motor Co.* **(1997)***,* **282 Mont. 270, 279, 937 P.2d 45, 50;** *Matter of S.L.M.***, 287 Mont. at 32, 951 P.2d at 1371).**

¶39 The current version of Subsection (3) of § 45-5-304, MCA, was enacted in 1979. *See* 1979 Mont. Laws Ch. 274, Sec. 1. Prior to that, a person who committed custodial interference could be excused only if the person returned the child before trial for the offense commenced. The legislative history of **the 1979 Amendment indicates that the "real need" behind offering the defense was to get the children back to where they belonged rather than to prosecute those who took the children. The original version of the proposed legislation sought to only change "trial" to "arrest." However, Senator Van Valkenburg noted that the county attorney determines when an arrest for custodial interference is made, and argued that "arrest" would be "too soon." He suggested that arraignment would be better, since it usually takes place two weeks after arrest. Senator Van Valkenburg's amendment also distinguished between those defendants who stay in-state and those who leave the state with the child, allowing those who stay in the state an opportunity to voluntarily return the child at a later time than those who leave. It was this version of the proposed Amendment that was unanimously passed by the Senate.**

17

¶40    We conclude that the Amendment's objective was to facilitate the return of children who are taken during parental custody disagreements, rather than to prosecute those persons who took the child.  This objective is clearly a legitimate one, given the State's concern with the best interests of children and in light of the Criminal Law Commission Comments warning against injecting criminal sanctions into disputes between "estranged parents."  **By changing "trial" to "arraignment," the Legislature sought to prevent the prosecution process from getting as far as a trial, while also keeping in mind the main objective of getting the children returned to their lawful custodians as soon as possible.**

¶41    Moreover, while we recognize that under some circumstances (i.e., when the parent is arrested with the child) a defendant who stayed in-state may not be able to benefit from the defense offered under § 45-5-304(3), MCA, we conclude there was no discriminatory purpose behind the Amendment.  **By agreeing to Senator Van Valkenburg's suggestion to use "arraignment" versus "arrest," the Legislature chose to give a defendant <u>more</u> time to take advantage of the defense offered in the statute.  "It is a basic equal protection principle that the invidious quality of a law claimed to be discriminatory must ultimately be traced to an impermissibly discriminatory purpose."** *Spina*, ¶ 85 (citing *Washington v. Davis* **(1976), 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597, 607-08).  None exists here.**

¶42    We emphasize that Subsection (3) provides an escape clause to the charges under (1) of § 45-5-304, MCA, that is available for all defendants to raise and argue at trial.  *See State v. Lance* (1982), 201 Mont. 30, 651 P.2d 1003 (defendant allowed to withdraw guilty plea

18

when not advised of the available defense of voluntarily returning child under § 45-5-304(3), MCA); and C*ontway v. Camp* (1989), 236 Mont. 169, 768 P.2d 1377 (petitioner's arrest for custodial interference was valid because voluntarily returning the children to state agency was not equivalent to returning children to lawful custodian who was established by court's custody order).  The defendant is free to argue to the trier of fact that he was prevented from voluntarily returning the child, or that he tried to return her, but was unsuccessful.

¶43    In the case at bar, however, we note that nothing in the record established that Price even sought an opportunity to voluntarily return S.L.P. prior to arrest, or even at the time of arrest.  Rather, Price's actions (taking S.L.P. in the middle of the night on the day he was scheduled to return her to Cheng and changing locations over a three day period in attempts to hide S.L.P.) indicate Price did not intend to return S.L.P. to her mother.

¶44    We conclude that § 45-5-304(3), MCA, is rationally related to a legitimate governmental interest of facilitating the return of children taken in custodial disagreements, and therefore conclude it does not violate equal protection.

### *Void for Vagueness*

¶45    Price argues in the alternative that § 45-5-304(3), MCA, is void for vagueness.  In regards to an ordinance or statute, the issue of vagueness may be challenged in two different respects: (1) the statute is so vague that the law rendered is void on its face; or (2) the statute is vague as applied in a particular situation.  *State v. Nye* (1997), 283 Mont. 505, 513, 943 P.2d 96, 101 (citing *State v. Martel* (1995), 273 Mont. 143, 149, 902 P.2d 14, 18).  *See also, State v. Britton*, 2001 MT 141, ¶ 5, 306 Mont. 24, ¶ 5, 30 P.3d 337, ¶ 5 (citing *State v.*

19

*Stanko*, 1998 MT 321, ¶ 17, 292 Mont. 192, ¶ 17, 974 P.2d 1132, ¶ 17). While Price does not clearly identify which of the two bases he relies upon, he refers us to the standards for a claim of facial vagueness, rather than "as applied." We therefore will address his appeal as a facial vagueness challenge. *See Britton*, ¶ 5**.**

**¶46** As we have previously stated, "a statute is void on its face if it [f]ails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *State v. Dixon*, 2000 MT 82, ¶ 20, 299 Mont. 165, ¶ 20, 998 P.2d 544, ¶ 20 (citing *Nye*, 283 Mont. at 513, 943 P.2d at 101).

**¶47** Price argues that persons of ordinary intelligence could interpret the terms "voluntarily returned" and "lawful custody" as used in Subsection (3), to mean that the act of keeping a child with them until arrested would result in a voluntary return of the child to law enforcement. We disagree. When construing a statute, it must be read as a whole, and its terms should not be isolated from the context in which they were used by the Legislature. *Nye*, 283 Mont. at 510, 943 P.2d at 99 (citing *State v. Lilburn* (1994)*,* 265 Mont. 258, 266, 875 P.2d 1036, 1041). Moreover, statutes should be construed according to the plain meaning of the language used therein. *Nye,* 283 Mont. at 510, 943 P.2d at 99 (citing *Lilburn,* 265 Mont. at 266, 875 P.2d at 1041).

**¶48** The plain language of § 45-5-304, MCA, taken as a whole, is not misleading as to the conduct prohibited, nor is it confusing as to the mitigation available to a defendant violating the statute for the first time. According to Webster's Third New International Dictionary (1971), "voluntary" means "performed, made, or given of one's own free will." When a

"term is one of common usage and is readily understood, it is presumed that a reasonable person of average intelligence can comprehend it." *Nye*, 283 Mont. at 513, 943 P.2d at 101 (citing *Martel*, 273 Mont. at 150, 902 P.2d at 18-19). A reasonable person of ordinary intelligence would understand that to "voluntarily return" a child, the accused, on his or her own initiative, would have to affirmatively take steps to make the child available for return. Once a person is arrested with the child, that option is no longer available.

¶49 Nor do we agree that the term "lawful custody" would be confusing to a person of ordinary intelligence. In construing the same statute challenged by Price, we have concluded that the words "lawful custody" are commonly used and "are sufficiently plain and precise to put any reasonable person on notice concerning what conduct is prohibited." *Contway*, 236 Mont. at 173, 768 P.2d at 1379. In *Contway*, **we held that the "lawful custody" in dissolution proceedings is that custody determined by the district court, and therefore the defendant's release of the children to a state agency, rather than to the custodian as decreed by the court, did not constitute a voluntary return under § 45-5-304(3), MCA. We noted: "[a]n individual cannot return children to the custody of a legal entity of his choice. He must return them to the entity granted lawful custody by the court in dissolution proceedings."** *Contway***, 236 Mont. at 173, 768 P.2d at 1379. Similarly, in the context of the whole statute, we conclude that a reasonable person would be put on notice that he or she may not return a child to law enforcement upon arrest in an attempt to avoid culpability under § 45-5-304(1), MCA.**

21

¶50   We conclude that Price has failed to establish that § 45-5-304(3), MCA, is either facially unconstitutional on vagueness grounds, or in violation of equal protection. Therefore, we hold the District Court did not err in denying Price's motion to dismiss on that basis.

¶51   Accordingly, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE