No. 02-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 64

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

JAMES ADAM DAVISON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC-2001-460,
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Vincent Van Der Hagen, Attorney at Law, Great Falls, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Mark Mattioli,
Assistant Attorney General, Helena, Montana

            Brant Light, County Attorney; Marvin Anderson, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs: January 16, 2003

Decided:  April 1, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    James Adam Davison appeals from the judgment of the Eighth Judicial District Court, Cascade County, denying his motion to dismiss. We affirm.

¶2    The following issue is raised on appeal:

¶3    Whether Davison was denied equal protection when he was charged with operating a clandestine laboratory under a recently enacted statute proscribing conduct which, he claims, is proscribed by an existing criminal statute.

## BACKGROUND

¶4    In October 2001 Great Falls police received information from a confidential informant that Davison was manufacturing methamphetamine. According to the informant Davison was trading methamphetamine with the manager of the Four Seasons Hotel in Great Falls. Police learned that Davison was producing methamphetamine in a laboratory near the hotel. Officers located the laboratory and later arrested Davison in his vehicle.

¶5    Davison was charged with two counts of operating an unlawful clandestine laboratory in violation of § 45-9-132, MCA, and one count of criminal possession of dangerous drugs in violation of § 45-9-102, MCA. Davison filed a motion to dismiss the first charge, arguing that he was denied equal protection because of the disparity in punishments between the crime of operating an unlawful clandestine laboratory and the similar crime of manufacturing dangerous drugs. In response the State argued that Davison did not have a constitutional right to be charged under a statute that provided for a lesser penalty, and that, for purposes of Montana's equal protection analysis, individuals convicted of operating an unlawful

clandestine laboratory and individuals convicted of manufacturing dangerous drugs are not similarly situated.

¶6     Davison then entered into a pretrial agreement with the State, whereby the State agreed to recommend to the District Court a ten-year sentence of imprisonment with six years suspended. Davison reserved his right to appeal the court's ruling on the motion to dismiss.

¶7     The District Court denied Davison's motion. Davison entered a plea of guilty to one count of operating an unlawful clandestine laboratory, and the court dismissed the remaining charges. The court followed the State's sentencing recommendation and sentenced Davison to ten years imprisonment with six years suspended. Davison now appeals the District Court's denial of his motion to dismiss.

## DISCUSSION

¶8     We review a trial court's denial of a motion to dismiss to determine whether the court's conclusions of law are correct. *State v. Dixon*, 2000 MT 82, ¶ 10, 299 Mont. 165, ¶ 10, 998 P.2d 544, ¶ 10. With respect to questions of constitutional law, we apply the following analysis:

> When the resolution of an issue involves a question of constitutional law, our review is plenary. [Citation omitted.] In addition,
>
> > "[t]he constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it

3

> conflicts with the constitution, in the judgment of the [C]ourt, beyond a reasonable doubt."

[Citation omitted.]

> Every possible presumption must be indulged in favor of the constitutionality of a legislative act. [Citation omitted.] The party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute.

*State v. Price*, 2002 MT 229, ¶¶ 27-28, 311 Mont. 439, ¶¶ 27-28, 57 P.3d 42, ¶¶ 27-28.

¶9 Davison argues that § 45-9-132, MCA, which proscribes the operation of unlawful clandestine laboratories, is unconstitutional. Section 45-9-132, MCA, provides that "[a] person commits the offense of operation of an unlawful clandestine laboratory if the person purposely or knowingly engages in: (a) the procurement, possession, or use of chemicals, precursors to dangerous drugs, supplies, equipment, or a laboratory location for the criminal production or manufacture of dangerous drugs as prohibited by 45-9-110 . . . ." According to Davison, the statute violates the equal protection clauses of the federal and Montana constitutions because it provides for a greater penalty than § 45-9-110, MCA, which proscribes the manufacture of dangerous drugs.

¶10 The Fourteenth Amendment to the United States Constitution and Article II, Section 4, of the Montana Constitution guarantee equal protection of the law. *State v. Spina*, 1999 MT 113, ¶ 85, 294 Mont. 367, ¶ 85, 982 P.2d 421, ¶ 85. To prevail on an equal protection challenge, the injured party must demonstrate that the law at issue discriminates by impermissibly classifying individuals and treating them differently on the basis of that

4

classification. *Spina*, ¶ 85. Once the classification is identified, and it is established that members of the different classes are similarly situated, we determine the appropriate level of scrutiny to apply. *McDermott v. Montana Dept. of Corrections*, 2001 MT 134, ¶ 31, 305 Mont. 462, ¶ 31, 29 P.3d 992, ¶ 31.

¶11 When reviewing equal protection challenges, we apply one of three recognized levels of scrutiny: strict scrutiny, intermediate scrutiny, and the rational basis test. *McDermott*, ¶ 31. Strict scrutiny is appropriate if a law affects a suspect class or threatens a fundamental right. Under this standard, the State has the burden of showing that the law is narrowly tailored to serve a compelling government interest. *McDermott*, ¶ 31. Intermediate scrutiny is appropriate if the law affects a right conferred by the Montana Constitution, but which is not found in the Constitution's Declaration of Rights. Intermediate scrutiny requires that the State demonstrate that the law in question is reasonable and that the need for the resulting classification outweighs the value of the right to an individual. *McDermott*, ¶ 32. The third level of scrutiny, the rational basis test, is appropriate if neither strict nor intermediate scrutiny apply. Under this standard, the law must be rationally related to a legitimate government interest. *McDermott*, ¶ 32.

¶12 Davison asserts that § 45-9-132, MCA, proscribes the same general conduct as § 45-9-110, MCA, which addresses, generally, the manufacture of dangerous drugs. Section 45-9-110, MCA, provides that "[a] person commits the offense of criminal production or manufacture of dangerous drugs if the person knowingly or purposely produces, manufactures, prepares, cultivates, compounds, or processes a dangerous drug . . . ." Davison

5

contends that because these statutes proscribe the same general conduct, the result is a legislative classification of individuals who commit the same substantive offense. He contends that because these statutes provide for different penalties, a conviction under either statute results in the disparate treatment of similarly situated persons. The offense of operating an unlawful clandestine laboratory carries a maximum penalty of twenty to twenty-five years imprisonment for the first offense. In contrast the offense of manufacturing dangerous drugs is a misdemeanor and carries a maximum of six months imprisonment. Davison concludes that this disparate treatment lacks a rational basis and, therefore, violates the constitutional guarantee of equal protection.

¶14 Davison's argument fails because he has not identified a classification that would warrant an equal protection analysis under any of the three recognized levels of scrutiny. Davison contends that individuals charged with operating unlawful clandestine laboratories are similarly situated with those charged with manufacturing dangerous drugs. In support of this contention, he assumes that the operation of a laboratory and the manufacture of dangerous drugs, as separate offenses, are substantively identical. According to Davison, "[t]he plain language of the statute . . . has the same meaning as the plain language in the statute outlawing the manufacture of dangerous drugs." The language to which Davison is referring includes that portion of subsection (1)(a) of § 45-9-132, MCA, which prohibits the "use of chemicals, precursors to dangerous drugs, supplies, equipment, or laboratory location for the criminal production or manufacture of dangerous drugs . . . ." He equates this provision to that portion of § 45-9-110, MCA, which prohibits the production, manufacture,

6

preparation, or cultivation of dangerous drugs. Davison concludes that because these statutes proscribe the same conduct, § 45-9-132, MCA, amounts to a classification of offenders and subjects them to unequal treatment.

¶15 We disagree with this underlying premise of Davison's argument. First, the operation of an unlawful clandestine laboratory and the manufacture of dangerous drugs are distinct and separate offenses and concern different conduct. The aim of § 45-9-110, MCA, is to deter the production of narcotics and to eliminate the detrimental effect of dangerous drugs generally. However, § 45-9-110, MCA, fails to adequately address the secondary effects of drug production, specifically, the hazards posed by the use of methamphetamine labs. As the State observes, § 45-9-132, MCA, was enacted with the purpose of criminalizing this particularly risky activity, which is not only uniquely dangerous, but has also generated substantial clean-up costs for the State. The dangers associated with the operation of methamphetamine labs include, for example, the use of volatile and highly flammable substances. The State also notes that methamphetamine producers often booby-trap their labs to avoid discovery, as evidenced by recent lab explosions in Cascade County. Thus, in contrast to § 45-9-110, MCA, the terms of § 45-9-132, MCA, are narrower in scope and address conduct that is collateral to the production of dangerous drugs.

¶16 In *State v. Renee*, 1999 MT 135, ¶ 32, 294 Mont. 527, ¶ 32, 983 P.2d 893, ¶ 32, we determined that individuals convicted of different offenses are not similarly situated for purposes of equal protection. We observed that while persons convicted of the same offense cannot be subjected to disparate sentences without a compelling justification, "it is quite

7

another [thing] to hold that persons convicted of *different criminal offenses* . . . must be punished equally." *Renee*, ¶ 30. We further noted that "numerous state courts have rightly concluded that persons convicted of different crimes are not similarly situated and, therefore, may be subjected to different penalties without implicating equal protection concerns." *Renee*, ¶ 31. Here, Davison's contention that § 45-9-132, MCA, and § 45-9-110, MCA, proscribe the same conduct is unsupportable and, as a result, Davison has not established that individuals convicted under these statutes are similarly situated. Therefore, we conclude that Davison has not made the requisite showing that § 45-9-132, MCA, affects similarly situated classes in an unequal manner. *Matter of S.L.M.* (1997), 287 Mont. 23, 32, 951 P.2d 1365, 1371.

¶17    In effect, Davison is urging this Court to confer upon individuals the right to be charged only with the crime that carries the most lenient sentence. However, we reject the notion that the State is required to charge a particular offense when the offender's conduct satisfies the elements of more than one crime. Davison ignores the well established principle that prosecutors are accorded charging discretion when offenders engage in conduct that violates more than one statute. Section 46-11-410(1), MCA, provides that "[w]hen the same transaction may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense." In *State v. Savaria* (1997), 284 Mont. 216, 224, 945 P.2d 24, 29, we stated that "when the facts support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion." Here, pursuant

8

to *Savaria*, the State legitimately exercised its prosecutorial discretion by charging Davison with one of two potential crimes.

CONCLUSION

¶18    In summary, we conclude that the offense of operating an unlawful clandestine laboratory and the offense of manufacturing dangerous drugs are separate and distinct crimes, and that an individual convicted under one statute is not, for purposes of the equal protection guarantee, similarly situated to an individual convicted under the other statute. For this reason, Davison has not made the requisite showing that § 45-9-132, MCA, affects similarly situated classes in an unequal manner.  Therefore, we hold that the District Court's conclusions of law are correct and affirm the court's denial of Davison's motion to dismiss.


                                                /S/ W. WILLIAM LEAPHART


We Concur:


/S/ KARLA M. GRAY


/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ JIM REGNIER