No. 01-895

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 264

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

AUGUST D. EGDORF,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and for the County of Musselshell, Cause No. DC-01-08,
Honorable John C. McKeon, Judge Presiding

COUNSEL OF RECORD:

       For Appellant:

       Bruce F. Fain, Murphy, Kirkpatrick & Fain, Billings, Montana

       For Respondent:

       Honorable Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

       Catherine Truman, County Attorney, Roundup, Montana

Submitted on Briefs:  June 20, 2002

Decided:  September 25, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 August D. Egdorf (Egdorf), an outfitter, was charged and convicted in the Justice Court of Musselshell County of five misdemeanor offenses involving violations of Montana's fish and wildlife laws and the laws pertaining to outfitters. Specifically, Egdorf was convicted of two counts of failing to report the unlawful taking of wildlife by a client, in violation of §§ 37-47-344 and 37-47-404, MCA (1999); possession of unlawfully taken game, in violation of § 87-3-112, MCA; conspiracy to kill a mule deer without a special permit, in violation of §§ 45-4-102 and 87-2-103, MCA; and solicitation to hunt without a license, in violation of §§ 45-4-101 and 87-2-103, MCA.

¶2 On March 5, 2001, Egdorf timely appealed his convictions to the Fourteenth Judicial District Court, Musselshell County, for a trial *de novo*. There, he moved to dismiss all counts pending against him, arguing that the extended statute of limitations for commencing prosecution of misdemeanor fish and game offenses usurped his rights to equal protection and due process of law and that mandatory forfeiture of licenses was unconstitutional. The District Court denied Egdorf's motion to dismiss. Pursuant to a plea agreement, the conspiracy and solicitation charges were dismissed, and Egdorf thereafter pled guilty to two instances of failing to report a game violation by a client, in violation of §§ 37-47-344 and 37-47-404, MCA, and possessing unlawfully taken game, in violation of § 87-3-112, MCA. Egdorf, however, reserved his right to appeal the District Court's denial of his motion to dismiss. Egdorf appeals. We affirm.

¶3 Egdorf raises two issues on appeal which we combine and restate as follows:

2

**¶4 Does Montana's three-year statute of limitations for misdemeanor violations of fish and game laws, set forth in § 45-1-205(5) and (6), MCA (1999), violate equal protection and due process of law?**

FACTUAL AND PROCEDURAL BACKGROUND

¶5 At all times relevant to this appeal, Egdorf worked as an outfitter. Defined generally, an outfitter is one who, for consideration, provides facilities or personal services to anyone wishing to hunt game, and who generally accompanies that person on the expedition. *See* § 37-47-101(11), MCA.

¶6 In April 2000, Egdorf was charged with five misdemeanor offenses involving violations of Montana's fish and wildlife laws and the laws pertaining to outfitters. The facts giving rise to these charges, misdemeanor violations, took place nearly two years earlier in November 1998.

¶7 Generally, prosecutions for misdemeanors must be commenced within one year after the offense is committed. Section 45-1-205(2)(b), MCA. However, prosecutions for misdemeanor "fish and game offenses" (offenses defined under Title 87 and Title 37, chapter 47 of the Montana Code Annotated) may be commenced within three years from the date of commission. *See* § 45-1-205(5) and (6), MCA. Title 87 pertains generally to restrictions and regulations relating to fish and wildlife while Title 37 governs the activities of outfitters.

¶8 Following his conviction in Justice Court, Egdorf appealed to the District Court of the Fourteenth Judicial District, Musselshell County, for a trial *de novo*. In his motion to dismiss all counts, Egdorf argued that the three-year statute of limitations imposed by § 45-1-205(5)

3

and (6), MCA, when compared to the one-year statute of limitations for most other misdemeanors, unconstitutionally deprived him of his fundamental rights to pursue basic necessities, enjoy liberties, and seek health and happiness, thereby violating his right to equal protection. In support of his position, Egdorf asserted that he was only able to pursue such basic necessities through employment as an outfitter.

¶9 Although acknowledging that the right to practice a particular profession is important, the District Court disagreed that the right was a fundamental right. The court therefore employed a rationality review to determine whether the extended time for prosecution beared "a reasonable relation to a proper legislative purpose so as not to be deemed arbitrary." *State v. Jack* (1975), 167 Mont. 456, 461, 539 P.2d 726, 729.

¶10 After reviewing the legislative history of § 45-1-205(5) and (6), MCA, the District Court concluded that the extended statute of limitations for misdemeanor violations of fish and game statutes served a reasonable relation to the proper legislative purpose of protecting wildlife, citing the testimony presented by K. L. Cool, Director of the Department of Fish, Wildlife, and Parks, to the Senate Fish and Game Committee on February 12, 1991:

> Many times investigations into serious wildlife violations take longer than a year to discover or complete and prosecution is not possible within the current one-year limitation. This is compounded by the fact that many sportsmen and sportswomen are from out-of-state.

¶11 The District Court concluded therefrom that in order to effectively enforce fish and game laws, the State must have time to discover the alleged violations and complete a competent investigation. With this legitimate governmental interest in mind, the District

4

Court denied Egdorf's motion to dismiss on both equal protection and due process grounds, forming the basis of this appeal.

## STANDARD OF REVIEW

¶12 We review a trial court's denial of a motion to dismiss to determine whether the court's conclusions of law are correct. *State v. Dixon*, 2000 MT 82, ¶ 10, 299 Mont. 165, ¶ 10, 998 P.2d 544, ¶ 10. With respect to questions of constitutional law, this Court's review is plenary, and we examine the district court's interpretation of the law for correctness. *State v. Bedwell*, 1999 MT 206, ¶ 4, 295 Mont. 476, ¶ 4, 985 P.2d 150, ¶ 4; *In the Matter of S.L.M.* (1997), 287 Mont. 23, 32, 951 P.2d 1365, 1370. In reviewing constitutional challenges to legislative enactments, the "'constitutionality of a legislative enactment is *prima facie* presumed, and every intendment in its favor will be made unless its unconstitutionality appears beyond a reasonable doubt.'" *State v. Renee*, 1999 MT 135, ¶ 21, 294 Mont. 527, ¶ 21, 983 P.2d 893, ¶ 21 (citing *State v. Lorash* (1989), 239 Mont. 345, 347, 777 P.2d 884, 886, quoting *T & W Chevrolet v. Darvial* (1982), 196 Mont. 287, 292, 641 P.2d 1368, 1370). Thus, the party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute. *State v. Price*, 2002 MT 229, ¶¶ 27-28, 311 Mont. 439, ¶¶ 27-28, 57 P.3d 42, ¶¶ 27-28.

## DISCUSSION

¶13 **Does Montana's three-year statute of limitations for misdemeanor violations of fish and game laws, set forth in § 45-1-205(5) and (6), MCA, violate equal protection and due process of law?**

¶14     Egdorf asserts that § 45-1-205(5) and (6), MCA, unconstitutionally infringes upon his rights to equal protection and due process of law by expanding the period of time allowed for commencing prosecution of misdemeanor violations of fish and game laws. Egdorf notes that while prosecutions for misdemeanors generally must be commenced within one year after commission, § 45-1-205(5) and (6), MCA, extends this period to three years for prosecutions of misdemeanor fish and game violations under Title 87 and Title 37, chapter 47. Egdorf argues that because these statutes allow prosecutions for fish and game violations to be commenced within three years, instead of one year, as for other misdemeanors, the statutes violate both principles of equal protection and substantive due process.

## A. *Equal Protection*

¶15     The Fourteenth Amendment to the United States Constitution, and Article II, Section 4, of the Montana Constitution guarantee equal protection of the law. *State v. Davison*, 2003 MT 64, ¶ 10, 314 Mont. 427, ¶ 10, 67 P.3d 203, ¶ 10. The basic rule of equal protection is that persons similarly situated with respect to the legitimate governmental purpose of the law must receive like treatment. *Renee*, ¶ 27. That being said, however, the equal protection clause does not preclude different treatment of different groups or classes so long as all persons within a group or class are treated the same. *Powell v. State Compensation Insurance Fund*, 2000 MT 321, ¶ 22, 302 Mont. 518, ¶ 22, 15 P.3d 877, ¶ 22. Thus, to prevail on an equal protection challenge, the injured party must demonstrate that the law at issue discriminates by impermissibly classifying individuals and treating them differently on the basis of that classification. *Davis*, ¶ 10. If the classes at issue are not similarly situated,

6

then the first criterion for proving an equal protection violation is not met, and we need look no further. *Powell*, ¶ 22.

¶16     Egdorf correctly notes that the first step in an equal protection analysis is to determine whether similarly situated groups are treated differently. From there he asserts that all misdemeanor offenders form a single similarly situated class for equal protection purposes. However, in *Renee* we noted that "persons convicted of different crimes are not similarly situated and, therefore, may be subjected to different penalties without implicating equal protection concerns." *Renee*, ¶ 31 (sentencing statutes applicable only to nonviolent felony offenders found not violative of misdemeanants' right to equal protection). We stated that while persons convicted of the same criminal offense cannot be subjected to grossly disparate sentences without a compelling state justification, "it is quite another [thing] to hold that persons convicted of *different criminal offenses* . . . must be punished equally." *Renee*, ¶ 30.

¶17     Although statutes of limitations are procedural in nature and do not define crimes or their punishments, *State v. Duffy*, 2000 MT 186, ¶¶ 31-32, 300 Mont. 381, ¶¶ 31-32, 6 P.3d 453, ¶¶ 31-32, *Renee*'s reasoning is equally applicable to Egdorf's contention that, for equal protection purposes, all misdemeanor offenses must form a similarly situated class. While misdemeanors generally involve offenses of lesser severity than felonies, all misdemeanors do not proscribe the same conduct, and are subject to differing punishments, a factor we relied upon in *Renee*. *See Renee*, ¶ 32. Indeed, it would be absurd to argue that the penalty for unlawfully taking game must be the same as that for driving under the influence or failing to file a tax return. While all are misdemeanors, they are nonetheless unique and separate

7

offenses. Thus, we conclude that the fish and game offenses at issue herein are, by legislative classification, not similarly situated with all other misdemeanors.

¶18     Equal protection does not preclude different treatment of different groups or classes so long as all persons within a similarly situated group or class are treated the same. *Powell*, ¶ 22. Here, Egdorf has failed to make the necessary threshold showing that the offenses with which he was charged are part of a similarly situated class of misdemeanor offenses that has subjected him to unequal treatment by the Legislature's determination that a longer period of time should be afforded to commence prosecution of the fish and game violations. Rather, all persons who are alleged to have violated § 45-1-205(5) and (6), MCA–the proper definition of Egdorf's class for purposes of his challenge– are exposed to the same three-year statute of limitations for prosecution. Thus, the challenged statutes do not lay "an unequal hand on those who have committed intrinsically the same quality of offense," and do not violate equal protection. *Renee*, ¶ 34 (citing *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660).

*B. Substantive Due Process*

¶19    Both the Fourteenth Amendment to the United States Constitution and Article II, section 17 of the Montana Constitution provide that no person shall be deprived of life, liberty, or property without due process of law. The guarantee of due process has both a procedural and a substantive component. The process requirement necessary to satisfy procedural due process comes into play only after a showing that a property or liberty interest exists. *ISC Distributors, Inc. v. Trevor* (1995), 273 Mont. 185, 191, 903 P.2d 170, 173. Substantive due process bars arbitrary governmental actions regardless of the procedures used to implement them and serves as a check on oppressive governmental action. *Englin v. Bd. of County Com'rs*, 2002 MT 115, ¶ 14, 310 Mont. 1, ¶ 14, 48 P.3d 39, ¶ 14.

> The theory underlying substantive due process reaffirms the fundamental concept that the due process clause contains a substantive component which bars arbitrary governmental actions regardless of the procedures used to implement them, and serves as a check on oppressive governmental action. ... Substantive due process primarily examines underlying substantive rights and remedies to determine whether restrictions are unreasonable or arbitrary when balanced against the purpose of the legislature in enacting the statute.

*Newville v. State, Dept. of Family Services* (1994), 267 Mont. 237, 249, 883 P.2d 793, 800.

¶20    In this case, Egdorf argues that § 45-1-205(5) and (6), MCA, violates substantive due process by needlessly extending the statute of limitations for prosecutions of misdemeanor fish and game offenses to three years. He asserts that the legislative purpose behind § 45-1-205(5) and (6), MCA– to facilitate the prosecution of misdemeanor violations by out-of-state offenders or those which are not readily apparent within the first year of the violation or require extensive investigation–can be accomplished within the general one-year time frame.

9

Egdorf notes, for instance, that the law tolls the time period for commencing prosecutions against offenders when the offender is beyond the State's jurisdiction. Section 45-1-206(1), MCA. In cases of more serious offenses, requiring a longer period of investigation, Egdorf contends that the offenses may be treated as felonies, thus invoking a longer statute of limitations. Egdorf concludes that the expanded period for commencing prosecutions of misdemeanor fish and game violations is arbitrary and unsupported by a rational legislative objective and therefore violates substantive due process.

¶21    In *Raisler v. Burlington N. Ry. Co.* (1985), 219 Mont. 254, 263, 717 P.2d 535, 541, this Court set forth the following analysis for evaluating a substantive due process claim:

> A substantive due process analysis requires a test of reasonableness of a statute in relation to the State's power to enact such legislation. 'The essence of substantive due process is that the State cannot use its police power to take unreasonable, arbitrary or capricious action against an individual.' . . . In order to satisfy substantive due process guarantees, a statute enacted under a state's police power must be reasonably related to a permissible legislative objective.

*Raisler*, 219 Mont. at 263, 717 P.2d at 541 (citations omitted). Accordingly, we turn to the legislative history of § 45-1-205(5) and (6), MCA, to determine whether the extended statute of limitations for commencing prosecution of misdemeanor fish and game offenses is reasonably related to a permissive legislative goal.

¶22    Historically, misdemeanor fish and game offenses were prosecuted under a one-year statute of limitations. In 1991, the Legislature amended § 45-1-205, MCA, providing a three-year statute of limitations for misdemeanor fish and game violations under Title 87. Testimony presented to the Senate Fish and Game Committee identified the special

10

circumstances surrounding prosecution of fish and game offenses. According to Bob Lane of the Department of Fish, Wildlife & Parks:

> These violations, by the nature of hunting and fishing, are not always readily discoverable, undercover operations frequently must span more than one hunting or fishing season, and many suspected violators are from out-of-state. All of these factors make it difficult, and sometimes impossible, to complete investigations and bring charges within a one year period of time.

¶23    Additionally, K.L. Cool, Director of the Department of Fish, Wildlife & Parks, testified before the Senate committee that "many times investigations into serious wildlife violations take longer than a year to discover or complete and prosecution is not possible within the current one-year limitations. This is compounded by the fact that many sportsmen and sportswomen are from out-of-state."

¶24    In 1993, with the urging of the Montana Outfitters and Guides Association, the Legislature again amended § 45-1-205, MCA, similarly providing a three-year statute of limitations for commencing prosecution of misdemeanor fish and game offenses under Title 37, chapter 47, which specifically applies to the activities of outfitters. According to the testimony presented by the Montana Outfitters and Guides Association to the House Fish and Game Committee, the one-year statute of limitations was often inadequate because of the nature of the activities giving rise to the offense. The outfitters explained:

> Often it is necessary to extend an investigation well over a year because of additional violations which may also be more severe in nature, such as felony game violations tied to the Lacey Act. The nature of these violations may cause the investigation to be extended to account for all the illegal activities. It was this same logic that enabled the Dept. of Fish, Wildlife and Parks to extend their statute of limitations to three years. Game violations are often tied to illegal outfitting activities.

11

¶25   In this case, Egdorf's act of assisting a client in the unlawful taking and possessing of a mule deer, in violation of Title 87 and Title 37, chapter 47, is precisely the type of offense contemplated by the outfitters and the Department of Fish, Wildlife & Parks, in extending the statute of limitations for misdemeanor fish and game offenses. As revealed by the legislative history, these offenses are not always readily discoverable and often times require more than one year to complete investigation. Compounding this problem is the fact that frequently the perpetrators reside out-of-state. Further, undercover operations necessary to identify violations may span over the course of several hunting seasons.

¶26   The United States Supreme Court has recognized that "[t]he protection and preservation of the state's wildlife is peculiarly within its police power and the state has great latitude in determining by what means are appropriate for protecting wildlife." *Baldwin v. Fish and Game Commission of Montana* (1978), 436 U.S. 371, 391, 98 S.Ct. 1852, 1864, 56 L.Ed.2d 354, 370 (citing *LaCoste v. Dept. of Conservation* (1924), 263 U.S. 545, 552, 44 S.Ct. 186, 68 L.Ed. 437). Numerous Montana cases have additionally recognized the State's power to protect public wildlife resources through regulations designed for that purpose. *State v. Boyer*, 2002 MT 33, ¶ 22, 308 Mont. 276, ¶ 22, 42 P.3d 771, ¶ 22; *State v. Huebner* (1992), 252 Mont. 184, 188, 827 P.2d 1260, 1263; *Nepstad v. Danielson* (1967), 149 Mont. 438, 440, 427 P.2d 689, 691.

¶27   We conclude, therefore, that the State has a legitimate governmental interest in preserving its wildlife. Extending the period prescribed for prosecuting misdemeanor violations of fish and game laws to three years is a reasonable exercise of the State's

legitimate police power. The statute of limitations set forth in § 45-1-205(5) and (6), MCA, is reasonably related to a permissive legislative purpose and, accordingly, does not violate principles of substantive due process. Consequently, the District Court did not err in denying Egdorf's motion to dismiss.

¶28    Affirmed.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER