No. 03-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 375

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

LINDA CHASE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
                       In and for the County of Anaconda-Deer Lodge, Cause No. DC 2000-07
                       The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

        For Respondent:

                Honorable Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant Attorney General, Jennifer Obie (Legal Intern), Helena, Montana; Michael Grayson, Anaconda-Deer Lodge County Attorney, Joan S. Borneman, Deputy County Attorney, Anaconda, Montana

Submitted on Briefs:  November 6, 2003

Decided: December 27, 2004

Filed:

_____
                          Clerk
Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Linda Chase (Chase) was convicted of two drug-related felonies and two drug-related misdemeanors by a jury in Montana's Third Judicial District in and for the County of Anaconda-Deer Lodge. At her sentencing hearing, the District Court enhanced her total sentence by five years under § 45-9-132(3)(b), MCA. Chase appeals both her convictions and the enhancement of her sentence. We affirm.

**ISSUES**

¶2 A restatement of the issues is:

¶3 Whether there was sufficient evidence to sustain Chase's convictions of: 1) operating an unlawful clandestine laboratory; 2) felony criminal possession of dangerous drugs (methamphetamine); 3) misdemeanor criminal possession of dangerous drugs (marijuana); and, 4) misdemeanor criminal possession of drug paraphernalia.

¶4 Whether the District Court abused its discretion by enhancing Chase's sentence under § 45-9-132(3)(b), MCA.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 In late January 2002, Captain Dan Blume (Blume) and Officer Karla Roche (Roche) received a tip that Chase and her boyfriend, Bill Melton, were operating a methamphetamine laboratory in Chase's apartment on the second floor of the Alpine Apartments in Anaconda, Montana, and were transporting parts of the lab in Melton's car. It is undisputed that residential apartments are located both above and below Chase's apartment.

¶6 Blume and Roche (the Officers) interviewed two individuals who gave them detailed

information concerning the meth lab and claimed to have seen it in operation. The description of the apparatus as well as the described chemicals and ingredients were consistent with the information the Officers received while being trained to recognize meth labs or meth lab materials.

¶7    Upon executing a search warrant for both Chase's apartment and Melton's car, agents found a chemical liquid in a can in Chase's kitchen which later was determined to contain methamphetamine. They also found various items in Chase's apartment that could be used as precursors for methamphetamine. The agents also discovered letters and a poem containing language typical to the meth drug culture.

¶8    While officers were searching Chase's apartment, other officers were looking for Melton and Chase, and Melton's car. When the police found them, Melton and Chase were taken into custody and the car was impounded. After leaving Chase's apartment, the agents searched Melton's car. They found marijuana in a woman's cosmetic bag as well as numerous items known to be used to manufacture methamphetamine. They also analyzed a substance found in Melton's car that was determined to be methamphetamine.

¶9    In total, analysis of five items taken from Chase's apartment and Melton's car by the officers revealed that two items contained methamphetamine, two items contained precursor ingredients to methamphetamine, and the fifth item contained a by-product of methamphetamine production. The forensic chemist who conducted the analytical tests concluded that the samples were taken from a red phosphorous iodine meth lab in which methamphetamine was successfully produced.

¶10 A jury trial was held on September 9, 2002. At the trial two witnesses testified that Chase and Melton were involved in methamphetamine production. One claimed that she had helped Chase clean up after a manufacturing process and the other claimed she had been given some methamphetamine from a recently-completed batch while visiting Chase's apartment. One of the witnesses also testified that Chase and Melton had asked her to shoplift methamphetamine ingredients for them.

¶11 Melton testified that the lab equipment was his but that he did not know how to use it to manufacture methamphetamine. Chase denied any knowledge of the meth lab or the accusations that she had asked others to shoplift for her.

¶12 The jury found Chase guilty of operating a clandestine laboratory. It also found her guilty of the other charges, with the exception of Count IV, possession of precursors, which was dismissed prior to jury deliberation. Lastly, the jury determined, beyond a reasonable doubt, that the laboratory operated within five hundred feet of a residence or business.

¶13 The District Court sentenced Chase to 25 years, 10 years suspended, at the Montana Women's Correctional Facility for operating an unlawful methamphetamine lab. Chase received an additional 5 years at the Women's Correctional Facility for felony possession of dangerous drugs. The court further sentenced her to six months for each misdemeanor charge. All four sentences were to run concurrently. The District Court enhanced her sentence for an additional 5 years, to run consecutively, upon the jury's finding that she operated the lab within five hundred feet of another residence.

## STANDARD OF REVIEW

¶14 We review the evidence in a criminal trial in the light most favorable to the prosecution to determine whether the trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We review a district court's imposition of a sentence for legality only. The standard of review of the legality of a sentence is whether the sentencing court abused its discretion. *State v. McCaslin*, 2004 MT 212, ¶¶ 16-17, 322 Mont. 350, ¶¶ 16-17, 96 P.3d 722, ¶¶ 16-17 (internal citations omitted).

## DISCUSSION

¶15 Chase maintains that the evidence used to convict her of operating an unlawful clandestine methamphetamine lab was insufficient. She claims that under § 45-9-132, MCA (2001), the State had to prove that she purposely or knowingly engaged in either "the procurement, possession, or use of chemicals, precursors to dangerous drugs, supplies, equipment, or a laboratory location for the criminal production or manufacture of dangerous drugs, or the transportation of or arranging for the transportation of chemicals, precursors of dangerous drugs, supplies, or equipment for the criminal production or manufacture of dangerous drugs." Chase asserts that the only evidence of her involvement in the procurement, or possession of chemicals or precursors to dangerous drugs, was the uncorroborated testimony presented by an unreliable witness.

¶16 Chase's argument, however, fails to acknowledge the considerable evidence presented by the officers who searched her apartment. As noted above, these officers found actual methamphetamine in a can in her kitchen sink as well as many of the ingredients of methamphetamine and materials and equipment used to manufacture methamphetamine. As

5

argued by the State, § 45-9-132, MCA, does not require the State to prove that Chase actually manufactured the drug in order for her to be guilty of operating an unlawful clandestine laboratory. *See State v. Davison*, 2003 MT 64, ¶ 15, 314 Mont. 427, ¶ 15, 67 P.3d 203, ¶ 15. Furthermore, the officers found a poem written by Chase in which she identified herself as a "lab whore," a term generally used to describe someone working in a methamphetamine lab.

¶17 In addition to the substances and materials found at Chase's apartment, the officers also found methamphetamine as well as other key ingredients and materials for methamphetamine manufacturing in Melton's car in which Chase was a passenger at the time it was detained for search. Therefore, not only was Chase in possession of the ingredients and supplies for "cooking" methamphetamine in her apartment, there was also evidence that she was engaged in transporting it at the time of her arrest.

¶18 The jury, after hearing all the evidence, did not believe Chase's claim that she had no knowledge that Melton was cooking methamphetamine in her small apartment, and no knowledge that they were transporting a significant portion of their operation at the time they were stopped and searched. Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact, the jury in this case, could have found the essential elements of this crime beyond a reasonable doubt.

¶19 Chase next argues that her sentence enhancement under § 45-9-132(3), MCA, must be set aside. At sentencing, the District Court added 5 years to Chase's sentence based on

6

the jury's finding the Chase had operated an unlawful lab within five hundred feet of a residence or business. Section 45-9-132(3)(b), MCA, provides:

> A person convicted of operation of an unlawful clandestine laboratory shall be fined an amount not to exceed $ 50,000, be imprisoned in a state prison for a term not to exceed 25 years, or both, if . . . the operation of an unlawful clandestine laboratory or any phase of the operation:
> . . .;
> (b) took place within 500 feet of a residence, business, church, or school; or
> . . . .

¶20 In order to warrant the additional penalty authorized in § 45-9-132(3)(b), MCA, the jury had to make a factual finding that Chase operated the lab within 500 feet of a residence. Blume testified that Chase's apartment was on the second floor of a three-floor apartment building. The apartment had a residential apartment located above it and below it. Additionally, other residential apartments were located on all three floors. Upon a finding that an unlawful clandestine lab was being operating in Chase's apartment, the evidence presented describing the location of the apartment in relation to other apartments supports the jury's special verdict that the lab operated within five hundred feet of other residences.

¶21 Lastly, Chase challenges the sufficiency of the evidence convicting her of felony possession of methamphetamine and misdemeanor possession of marijuana and drug paraphernalia.

¶22 We conclude that the evidence presented that methamphetamine was found in a can in Chase's kitchen sink was sufficient for a jury to find her guilty of possession of dangerous drugs, *i.e*., methamphetamine. We also conclude that evidence establishing that marijuana was found inside a cosmetic case in Melton's car at the time Melton and Chase were

7

apprehended together with Chase's admission that she smoked marijuana was sufficient to sustain the jury's conviction of possession of marijuana. Lastly, the State's evidence that drug paraphernalia was found in both Chase's apartment and in Melton's car was sufficient to support the jury verdict of misdemeanor possession of such items.

## CONCLUSION

¶23    Affirmed.

/S/ PATRICIA O. COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ JIM RICE