DA 07-0448

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 72

TOWN & COUNTRY FOODS, INC.,

        Plaintiff and Appellant,

   v.

CITY OF BOZEMAN,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 05-522
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Arthur V. Wittich and Margot E. Barg, Wittich Law Firm, Bozeman, Montana

        For Appellee:

                Philip F. Walsh, Walsh & McKenna, Bozeman, Montana

                        Submitted on Briefs: May 28, 2008

                                Decided: March 10, 2009

Filed:

           _____
                       Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 The Eighteenth Judicial District Court, Gallatin County, granted summary judgment in favor of the City of Bozeman (the City), affirming the city commission's denial of the application for approval of a site plan proposed by Town and Country Foods, Inc. (T&C).

¶2 We restate the issues as follows:

¶3 Issue 1: Did the Bozeman city commission violate T&C's constitutional rights to substantive due process and equal protection of the law by denying its application for approval of a site plan?

¶4 Issue 2: Was the Bozeman city commission's decision to deny T&C's application an abuse of discretion?

## BACKGROUND

¶5 T&C desires to build on land it owns in a district zoned B-1 according to the Bozeman Unified Development Ordinance (UDO or Zoning Ordinance). The B-1 zone is a "neighborhood business district" and the size of buildings in the B-1 zone is limited to 5,000 square feet. The intent of the B-1 zone is,

> to provide for smaller scale retail and service activities frequently required by neighborhood residents on a day to day basis, as well as residential development as a secondary purpose, while still maintaining compatibility with adjacent residential land uses. Development scale and pedestrian orientation are important elements of this district.

Section 18.18.010(A), UDO.

¶6 In 2005, after the City rejected an initial proposal to build a 32,000 square foot store on the subject property, and following several meetings with the planning director and his

staff, T&C applied for approval of a new site plan. In its new plan, T&C proposed to build six mini-stores, each serving a different purpose, e.g., a separate pharmacy, bakery, produce market, etc. In an attempt to meet the B-1 size requirement, the plan proposed each mini-store to be under 5,000 square feet in size. The planning director and his staff told T&C its plans complied with the letter of the zoning regulations and that the office of the planning director would recommend approval, but the city commission "may see it differently, and that's their prerogative, it's their discretion to do so . . . ."

¶7     In May 2005 at a public meeting, the city commission voted unanimously to "reclaim" T&C's application, rather than leave the decision to the office of the planning director. At this meeting, Jerry Perlinski, the owner of T&C, said he agreed the project belonged with the commission rather than going through the regular channels in the administrative review process.

¶8     Two months later, the city commission voted four to one to deny T&C's application. The record reflects that members of the commission verbally stated reasons for the denial at a public meeting and also informed T&C of their reasons for the denial in a letter, the details of which are discussed below. The record indicates that, although each of the mini-stores proposed by T&C complied with the building size requirements of the B-1 zone, the city commission decided the overall aggregate impact of the proposal did not harmonize with the intent of the B-1 zone.

¶9     T&C commenced this action, claiming the city commission violated its constitutional right to due process by arbitrarily and capriciously deciding to consider its application itself,

3

rather than allowing the decision to be made by the planning director, and denying the site plan approval application. T&C also alleged that the city commission violated its constitutional right to equal protection of the law because it treated T&C differently from other similarly situated applicants.

¶10    The City moved for summary judgment, asserting that because the Zoning Ordinance gave the city commission broad discretion in granting applications for site plan approval, T&C did not have a protected interest in its application, which prevented T&C from establishing its substantive due process and equal protection of the law claims. The District Court granted summary judgment in favor of the City, concluding that because the Zoning Ordinance granted the city commission broad authority and significant discretion in rendering its decision to approve or reject T&C's site plan, T&C did not have a protected property interest in having its application granted. The District Court concluded no material facts were in dispute and the city commission followed proper procedure by stating its findings at the public hearing and reducing its reasons to writing in the denial letter sent to T&C.

¶11    T&C appeals, arguing the District Court relied on disputed facts to determine the Zoning Ordinance granted the city commission broad discretion and that the city commission acted arbitrarily and capriciously in reclaiming and denying its application.

### STANDARDS OF REVIEW

¶12    The standard of review in appeals from summary judgment rulings is de novo. *Erler v. Creative Finance & Investments, L.L.C.*, 2009 MT 36, ¶ 16, ___ Mont. ___, ___ P.3d ___.

4

Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Erler*, ¶ 16 (citing M. R. Civ. P. 56). We review questions of law to determine whether the district court's legal conclusions are correct. *Erler*, ¶ 16.

¶13 Section 76-2-327, MCA, authorizes a court reviewing a zoning decision made by a board of adjustment or any officer, department, board, or bureau of the municipality to hold a hearing and reverse, affirm, or modify a zoning decision. In Montana, a district court reviews the zoning authority's decision for an abuse of discretion. *Flathead Citizens v. Flathead County Bd.*, 2008 MT 1, ¶ 32, 341 Mont. 1, 175 P.3d 282; *Arkell v. Middle Cottonwood Bd.*, 2007 MT 160, ¶ 24, 338 Mont. 77, 162 P.3d 856. An abuse of discretion occurs when the information upon which the municipal entity based its decision is so lacking in fact and foundation that it is clearly unreasonable. *Flathead Citizens*, ¶ 32; *North 93 Neighbors, Inc. v. Bd. of Co. Com'rs*, 2006 MT 132, ¶ 44, 332 Mont. 327, 137 P.3d 557 (quotation omitted).

¶14 This Court does not sit as a super-legislature or super-zoning board. *Englin v. Board of County Com'rs*, 2002 MT 115, ¶ 16, 310 Mont. 1, 48 P.3d 39; *Anderson Ins. v. City of Belgrade*, 246 Mont. 112, 120, 803 P.2d 648, 653 (1990). The courts give deference to the decisions of the local board. 83 Am. Jur. 2d *Zoning and Planning* § 677 (2003) (citing *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Tp.*, 181 F.3d 403 (3rd Cir. 1999)).

¶15 The record shows the material facts of the instant case—the contents of T&C's application, the process of approval, and the city commission's stated reasons for denial—are not in dispute. Thus, only questions of law remain.

**DISCUSSION**

¶16 *Issue 1: Did the Bozeman city commission violate T&C's constitutional rights to substantive due process and equal protection of the law when it denied T&C's application for approval of a site plan?*

¶17 T&C is challenging the action of the city commission in denying its application. It does not challenge Bozeman's Zoning Ordinance. Under these circumstances, whether the Bozeman city commission acted illegally when it denied T&C's application does not present a constitutional question. In examining a substantive due process claim, a court is concerned with the constitutionality of the underlying rule rather than with the fairness of the process by which the government applies the rule to an individual. Rotunda & Nowak, 2 *Treatise on Constitutional Law: Substance and Procedure* § 14.6 (2nd ed. 1992). This Court has set forth the analysis for evaluating a substantive due process claim:

> Substantive due process analysis requires a test of reasonableness of a statute in relation to the State's power to enact such legislation. The essence of substantive due process is that the State cannot use its police power to take unreasonable, arbitrary or capricious action against an individual. In order to satisfy substantive due process guarantees, a statute enacted under a state's police power must be reasonably related to a permissible legislative objective.

*Raisler v. Burlington N. R. Co.*, 219 Mont. 254, 263, 717 P.2d 535, 541 (1985) (citations and internal quotations omitted) (followed in *State v. Webb*, 2005 MT 5, ¶ 22, 325 Mont. 317, 106 P.3d 521); *State v. Egdorf*, 2003 MT 264, ¶ 21, 317 Mont. 436, 77 P.3d 517).

6

Substantive due process primarily examines underlying substantive rights and remedies to determine whether restrictions are unreasonable or arbitrary when balanced against the purpose of a government body in enacting a statute, ordinance or regulation. *Webb*, ¶ 21; *Egdorf*, ¶ 19. In other words, the test of whether the government denied a party constitutional substantive due process concerns an examination of whether the government, by enacting a piece of legislation, acted in an unreasonable, arbitrary, or capricious fashion.

¶18 A constitutional substantive due process analysis is inapplicable under the facts of this case because T&C does not allege Bozeman's Zoning Ordinance is unconstitutional. T&C essentially argues the city commission failed to follow its own ordinance in denying its application and therefore acted arbitrarily and capriciously. We address this argument in Issue 2.

¶19 T&C also claims the city commission violated its constitutional right to equal protection of the law when it denied its application. The Fourteenth Amendment to the United States Constitution, and Article II, Section 4, of the Montana Constitution guarantee equal protection of the law. *Egdorf*, ¶ 15; *State v. Davison,* 2003 MT 64, ¶ 10, 314 Mont. 427, 67 P.3d 203. The basic rule of equal protection is that the law must treat similarly-situated individuals in a similar manner. *Farrier v. Teacher's Retirement Bd.*, 2005 MT 229, ¶ 14, 328 Mont. 375, 120 P.3d 390. To prevail on an equal protection challenge, the injured party must demonstrate that the law at issue discriminates by impermissibly classifying individuals or entities and treating them differently on the basis of that classification. *Davison,* ¶ 10.

7

¶20 T&C does not allege that the law, in this case Bozeman's Zoning Ordinance, discriminated against it by classifying its property differently than other similarly situated property. T&C simply claims that the city commission denied its application, and thus treated it differently than others owning property in B-1 zoned areas whose site plan applications were granted. Again, T&C's complaint challenges the city commission's decision, rather than the Zoning Ordinance, and does not present a constitutional denial of equal protection claim.

¶21 *Issue 2: Was the Bozeman city commission's decision to deny T&C's application an abuse of discretion?*

¶22 Generally, if a decision by a zoning authority adversely affects the owner of land in the use of property, that owner is an aggrieved party and may challenge the decision. Eugene McQuillin, *Municipal Corporations* § 25.318 (3rd ed. West 2003). Aggrieved parties may challenge a zoning authority's decision as unreasonable, arbitrary, capricious, unfair, or discriminatory. McQuillin, *Municipal Corporations* § 25.309.

¶23 In Montana, municipalities may regulate, *inter alia*, the size of buildings and the location and use of buildings, structures, and land for trade, industry, residence or other purposes to promote health, safety, morals, or the general welfare of the community. Section 76-2-301, MCA. Bozeman adopted its Zoning Ordinance pursuant to § 76-2-301, MCA, and the ordinance requires all development proposals to be subject to site plan approval by the city commission or the planning director. Sections 18.02.020, 18.34.010(A), 18.64.010, UDO. The requirements for denial of a site plan approval application are if "the conditions

required for approval do not exist" and that the denial must be in writing. Section 18.34.090(D), UDO.

¶24 In Bozeman, the planning director generally grants or denies site plan approval applications. However, the city commission, upon a vote of four out of five of its members, may reclaim the final approval of an application from the planning director if it does so before the planning director makes an official decision. Section 18.64.010(B)(1), UDO. If an aggrieved party wishes to appeal a zoning decision made by the city commission, they may present "to a court of record a petition, duly verified, setting forth that such decision is illegal in whole or in part and specifying the grounds of illegality." Section 18.66.080(B), Bozeman Municipal Code (BMC).

¶25 T&C appealed to the District Court, alleging the city commission's decision in denying the site plan application was arbitrary, irrational, and in bad faith. As discussed above, we review the city commission's decision for an abuse of discretion. That is, whether the city commission's zoning decision was soundly based in fact. *See Flathead Citizens*, ¶ 32.

¶26 T&C's argument on appeal is that the District Court relied on highly disputed facts to determine that the city commission did not act arbitrarily and capriciously in three ways. First, T&C presented evidence it complied with the size requirements of the Zoning Ordinance, the Zoning Ordinance allowed the mini-stores to share common walls, and the planning department recommended approval. Thus, T&C claims disputed facts exist regarding whether its site plan conflicts with the Zoning Ordinance. Second, T&C asserts

9

whether the city commission "carefully weighed" the criteria listed in the Zoning Ordinance is disputed because the record shows the city commission did not consider all 20 criteria which, according to T&C, is mandated. Finally, T&C claims whether the city commission had any legitimate reason to reclaim its application from the planning director is disputed.

¶27 Essentially, T&C is arguing the District Court erred because it failed to re-weigh the evidence, sit as a fact finder, and determine if T&C's plan comported with the Zoning Ordinance. However, pursuant to Bozeman's Zoning Ordinance, the city commission is the appropriate fact-finder, and it decided T&C's site plan did not comply with requirements of the B-1 zoning district. The District Court's job is not to re-try the facts, but to review the city commission's decision for an abuse of discretion. *Flathead Citizens*, ¶ 32. In turn, this Court reviews whether the District Court erred in concluding the city commission did not abuse its discretion. *See Flathead Citizens*, ¶ 55. If the record contains sufficient evidence showing the city commission's decision to deny T&C's application was reasonable and based in fact, we will not disturb the District Court's conclusion.

¶28 Section 18.34.090, UDO, lists 20 criteria for the city commission to consider when reviewing a site plan application. The 20 enumerated criteria include, *inter alia*, conformance with the growth policy, conformance with the Zoning Ordinance and other applicable laws, impact on existing and anticipated traffic and parking, pedestrian and vehicular traffic, setbacks and wetlands, and comment from affected parties. Additionally, the city commission considers the relationship of the site plan elements to conditions both on and off the property, including compatibility with the adjacent neighborhoods, and whether

10

the design produced an efficient, functionally organized and cohesive development. Section 18.34.090(A)(20), UDO.

¶29 The record shows the city commission considered the relevant criteria listed in § 18.34.090(A), UDO, and stated its reasons for deciding that T&C's site plan did not conform to the B-1 zone. At the public meeting the city commissioners heard from the associate planner, a project engineer, and several members of the community. The associate planner discussed setbacks, wetlands, floodplains, and parking issues then recommended approval of T&C's application. The project engineer addressed issues relating to traffic and rates of development. Jerry Perlinski addressed some of the traffic concerns regarding this kind of store being located close to a residential area. Community members, affected by the development, made both positive and negative comments about T&C's site plan.

¶30 Finally, each commissioner commented on the proposal. One supported approving the site plan because he thought it adequately addressed and mitigated traffic issues and because the size of the buildings complied with the requirements of the zone. The other commissioners, voting to deny T&C's application, stated their reasons for denial were: "shoehorning" the development into the proposed site; the distance of the development from controlled intersections; a traffic study showing traffic degradation; setting an undesirable precedent for the B-1 zone; negative neighborhood feedback; historic preservation; parking problems; and, meeting the character of the B-1 zone and neighborhood. In its letter, the city commission told T&C its application was denied because it was "not in keeping with the

11

character of the neighborhood or the intent of the B-1 Neighborhood Business zoning district."

¶31 We cannot conclude that the information relied on by the city commission to make its decision lacked foundation or that its decision was unreasonable. The city commission addressed relevant criteria—vehicle and pedestrian traffic, parking, wetlands, setbacks, and conformity with the neighborhood. The city commission complied with its Zoning Ordinance and gave reasons for its denial of T&C's site plan. The city commission did not abuse its discretion.

¶32 Further, the city commission did not abuse its discretion when it reclaimed T&C's application. The Zoning Ordinance provides that the city commission may make the final decision on an application--either on appeal from the planning director, or after its own consideration. Section 18.66.010(B), BMC; § 18.64.010(B)(1), UDO. Although the planning director said he would recommend approval, he warned T&C that the city commission had the prerogative to disagree, thus his decision was not final. The city commission held a public meeting and unanimously voted to reclaim T&C's application from the planning director, giving as their reasons the heading off of an eventual appeal and protecting public interest and safety. The city commission followed its ordinance in reclaiming and passing on T&C's application. We do not determine it abused its discretion in doing so.

**CONCLUSION**

12

¶33     The record shows that the Bozeman city commissioners did not abuse their discretion in reclaiming and denying T&C's application for site plan approval.

¶34     Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON